**Vernon CLICK, Plaintiff,**

**v.**

**BOARD OF POLICE COMMISSION-ERS, et al., Defendants.**

No. 82–0459–CV–W–8–9.

United States District Court, W.D. Missouri, W.D.

May 28, 1985.

Gerald H. Rosen, Kansas City, Mo., for plaintiff.

Neal L. Millert, Kansas City, Mo., for defendants.

## ORDER [1]

BARTLETT, District Judge.

Based on a citizen's complaint and subsequent investigation, the Chief of Police of the Kansas City, Missouri, Police Department (the KCPD) assessed a three-day disciplinary suspension against plaintiff for the use of unnecessary force in the performance of his duties. Plaintiff asserts a claim under 42 U.S.C. § 1983 for deprivation of procedural due process guaranteed by the Fourteenth Amendment and asks the Court to declare the KCPD disciplinary procedures unconstitutional.[2] Defendants have filed a motion for summary judgment asserting that plaintiff does not have a claim under 42 U.S.C. § 1983 for deprivation of procedural due process under the Fourteenth Amendment because a) plaintiff does not have a constitutionally protected liberty or property interest; and b) even if plaintiff possesses a constitutionally protected liberty or property interest, he was afforded the minimum procedural due process required by the Fourteenth Amendment to the United States Constitution.

In addition, defendants assert that summary judgment should be granted because defendants have qualified, official, sovereign, and good faith immunity and because the Court lacks subject matter jurisdiction. These issues were not briefed by either party and will not be considered in this Order.

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, it is the Court's obligation to view the facts in the light most favorable to the non-moving party and to allow the non-moving party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States,* 600 F.2d 725, 728–28 (8th Cir.1979), *cert. denied* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning,* 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter,* 581 F.2d 698, 703 (8th Cir.1978). However, summary judgment is an extreme remedy which should not be granted, unless defendant has established his right to judgment beyond controversy. *Ozark Milling Co. v. Allied Mills, Inc.,* 480 F.2d 1014, 1015 (8th Cir.1975); *Oskey Gasoline*

---

**1.** The following cases have been consolidated for resolution of common legal issues: *Webb v. Board of Police Commissioners,* Case No. 82–0196–CV–W–9; *Callahan v. Board of Police Commissioners,* No. 82–0474–CV–W–4–9; *Louden v. Board of Police Commissioners,* No. 82–0563–CV–W–1–9; *Faherty v. Board of Police Commissioners,* No. 82–0564–CV–W–1–9; *Coughlin v. Board of Police Commissioners,* No. 82–0562–CV–W–9; *Click v. Board of Police Commissioners,* No. 82–0459–CV–W–8–9; *LaSalle v. Board of Police Commissioners,* No. 82–0817–CV–W–9. Although many of the legal issues are identical, each case has a different factual background. Therefore, a separate decision will be rendered in each case.

**2.** The official policies for disciplinary action, handling citizen complaints, and grievance procedures are set forth in the following documents:

1) General Order 80–4 summarizes the Citizen Complaint Procedure;

2) Policy No. 425 sets forth the policy and procedures of the KCPD pertaining to the Office of Citizen's Complaints (OCC);

3) Policy No. 601 summarizes the KCPD policy pertaining to disciplinary action;

4) General Order 77–24 sets forth the KCPD Grievance Procedure effective as of October 28, 1977;

5) General Order 79–12 rescinds General Order 77–24 and sets forth the KCPD Grievance Procedure effective as of July 18, 1979;

6) Policy No. 301 summarizes the policy of the KCPD pertaining to the Grievance Committee; and

7) Policy No. 405 summarizes the policy of the KCPD pertaining to grievances.

*and Oil Co. v. Continental Oil Co.*, 534 F.2d 1281, 1285 n. 9 (8th Cir.1976).

## FACTS

Rule 56(e), Federal Rules of Civil Procedure, provides that

> [W]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in the rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Defendants' motion is supported by an affidavit from Norman Caron, Chief of Police, which sets forth certain facts and identifies certain documents. Plaintiff, Vernon Click, has neither filed an affidavit nor referenced specific facts in the record showing that there is a genuine issue of material fact. Therefore, the facts presented properly by defendants will be used in ruling the motion.

Plaintiff was a police officer with the Kansas City, Missouri, Police Department (KCPD) at the time the incident giving rise to this lawsuit occurred. Defendant, the Board of Police Commissioners (Board), is the governing body of the KCPD. Defendant, Norman Caron, the Chief of Police and chief administrative officer of the KCPD, was responsible to the Board for the proper administration of the police department.

The Office of Citizen Complaints (OCC) was established by the Board of Police Commissioners to accept citizens' complaints, initiate investigations and advise the Chief of Police whether a citizen's complaint has been substantiated. The Chief of Police, not the OCC, is responsible for determining what disciplinary action, if any, should be imposed.

According to the written procedures, a citizen's complaint can be lodged at any police facility and is then forwarded to the OCC and to the supervisor or officer in charge of the person against whom the complaint has been made. The OCC Director then notifies the Chief of Police that a citizen's complaint has been filed. The Chief of Police notifies the appropriate bureau commander who notifies the division commander. Pursuant to General Order 80–4, the division commander is responsible for notifying the police officer involved and his supervisor.

A citizen's complaint is referred by the OCC to the Internal Affairs Division (IAD) for investigation. IAD may use any recognized investigative method to investigate the allegations contained in the citizen's complaint. There is no requirement in General Order 80–4 that the officer charged with misconduct be given an opportunity to present his version of the incident. Pursuant to General Order 80–4, IAD may take "signed written statements from members who are the subject of an incident...." IAD sends the results of the investigation to the OCC.

The OCC classifies each complaint as conciliated, substantiated, unsubstantiated, unfounded, or closed and forwards its finding to the Chief of Police. A "substantiated" complaint means the police officer acted in violation of the Code of Ethics, Rules of Conduct, or a written departmental directive. An "unsubstantiated" complaint means the investigation produced insufficient information to clearly prove or disprove the allegations. The remaining classifications are not involved in this lawsuit.

Upon receipt of the OCC determination, the Chief of Police reviews the case, the investigation conducted, and the findings of the OCC Director. The Chief of Police may either concur or not concur with the determination of the OCC Director.

If the Chief of Police concurs with the finding of the OCC that the allegations are substantiated, the Chief notifies the OCC Director. The OCC Director sends written notification of the outcome to the Chief of Police, the bureau commander, IAD, the Personnel Division, and the complainant. A record of the complaint and disposition is

entered in the police officer's permanent personnel file.

The Chief of Police may direct the police officer's bureau commander and/or division commander to recommend disciplinary action. The Chief of Police determines the appropriate disciplinary action and notifies the OCC Director and the police officer. An officer who is suspended by the Chief of Police for less than fifteen days is not permitted to appeal to the Board of Police Commissioners.[3]

If there is new or previously undisclosed information pertaining to the complaint, the police officer may request reconsideration of the findings of the OCC. Unless the findings of the OCC are changed, the police officer may not request that the Chief of Police reconsider the discipline imposed.

At any time after the citizen's complaint is filed, the police officer who is the subject of the complaint, his attorney, the complainant, or the complainant's attorney has the right to inspect the investigation file.

On December 11, 1981, a citizen's complaint against plaintiff was filed with the OCC alleging the use of excessive force during an arrest. On December 15, 1981, plaintiff's division commander was notified that a citizen's complaint alleging that plaintiff had used excessive force had been filed against plaintiff. Pursuant to General Order 80-4, plaintiff should have been promptly notified of the charges against him by his division commander. Whether plaintiff was in fact notified of the charges by his division commander is not established. During the IAD investigation plaintiff gave a statement to Investigator V.L. Davis.

The OCC found the allegation of excessive force substantiated. After the OCC determination, plaintiff's supervisor prepared an incident report concluding that plaintiff had been verbally discourteous, but had not used unnecessary force. Plaintiff acknowledged receipt of the incident report by signing the report. Plaintiff's supervisor, shift commander, division commander and bureau commander each recommended discipline. On March 31, 1982, the Chief of Police suspended plaintiff for three days without pay for the use of unnecessary force in the performance of his duties.

## DEPRIVATION OF DUE PROCESS

■ In order to determine whether plaintiff has been deprived of a constitutionally protected right to procedural due process, a two-step analysis is required: 1) did the discipline imposed deprive plaintiff of a liberty or property interest protected by the Fourteenth Amendment; and 2) if so, did the manner in which the discipline was imposed include constitutionally mandated procedural protections. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

### *Suspension deprived plaintiff of a constitutionally protected property interest*

Plaintiff asserts that he has been deprived of a property interest in the loss of wages and benefits during the period of suspension. In *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709, the Supreme Court stated:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must

**3.** The Chief of Police has the power to promote, discipline, and suspend all police officers. Mo. Rev.Stat. § 84.500. Any such action other than suspensions of less than 15 days is reported to the Board. *Id.* A police officer who is adversely affected by action taken by the Chief of Police, other than suspensions of less than 15 days, is entitled to a public hearing before the Board. Mo.Rev.Stat. § 84.610. There is no statutory procedure for review of suspensions of less than 15 days.

Before discharge or removal, police officers are entitled to notice of the charges against them, the right to appear before the Board of Police Commissioners at a public hearing to defend against the charges, the right to confrontation of witnesses, and the right to counsel. *Id.* After such a hearing, the Board has the authority to remove, suspend, reprimand, or impose a fine. *Id.* The decision of the Board is final. *Id.*

have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . .

Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

■■■ "A property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976) [footnote omitted]. A public employee who is entitled under state law to employment unless there is good cause for dismissal has a constitutionally protected property interest in continued employment. *Cleveland Board of Education v. Loudermill*, —— U.S. ——, —— ——, 105 S.Ct. 1487, 1492–93, 84 L.Ed.2d 494 (1985); *Hughes v. Whitmer*, 714 F.2d 1407, 1414 (8th Cir.1983).[4] Under state law, Kansas City police officers who have served at least six months probationary service are appointed to the police force and are subject to discharge or removal only for cause. Mo.Rev.Stat. § 84.600. Therefore, a police officer has a property interest in continued employment.

■■■ A commissioned police officer's right to continued employment includes the right to the office and its emoluments such as rank and compensation. *Moore v. Damos*, 489 S.W.2d 465, 468 (Mo.App.1972); *accord Pfefer v. Board of Police Commis-*

*sioners*, 654 S.W.2d 124, 127 (Mo.App. 1983); *Heidebur v. Parker*, 505 S.W.2d 440, 444 (Mo.App.1974). A police officer who is suspended for three days loses compensation and other emoluments of the office for the period of suspension. Therefore, involuntary temporary suspension deprives a police officer of a constitutionally protected property interest.

■■■ As long as a property deprivation is not *de minimis*, its gravity is irrelevant to a determination of whether due process should be afforded. *Goss v. Lopez*, 419 U.S. 565, 576, 95 S.Ct. 729, 757, 42 L.Ed.2d 725 (1975). The length and consequent severity of a deprivation should be considered in determining what procedural protections are constitutionally required, not in determining whether the deprivation entitles plaintiff to due process. *Id.* Plaintiff's three-day suspension was not *de minimus* because he was deprived of compensation for the period of the suspension. *Vorbeck v. McNeal*, 560 S.W.2d 245, 250 (Mo.App. 1977); *Moore*, 489 S.W.2d at 468. Therefore, plaintiff was deprived of a property interest when he was suspended without pay for three days. *Spencer v. Board of Police Commissioners*, 564 F.Supp. 1222, 1230 (W.D.Mo.1983).

*Plaintiff was deprived of a constitutionally protected liberty interest.*

■■■ To prevail on his claim that he has been denied a constitutionally protected liberty interest, plaintiff must demonstrate that defamation by a public official has injured his good name, reputation, honor, or integrity and that as a result of the defamation "a right or status previously recognized by state law was distinctly altered or extinguished." *Paul v. Davis*, 424

---

4. A contrary view was taken by the Missouri Court of Appeals, Kansas City District, when it stated: "The commission of a police officer—revocable for cause at any time [§ 84.600]—does not create a property interest in that status but does give rise to emoluments which are entitled to the protection of the statutes." *Sowder v. Board of Police Commissioners*, 553 S.W.2d 525, 528–29 (Mo.App.1977). The same court that decided *Sowder* subsequently adopted the hold-

ing in *Moore* without referring to its decision in *Sowder* when it stated: "A police officer, when he is commissioned under statutory or code provisions for dismissal only after notice, hearing and a finding of cause, acquires a right or title to the office and its emoluments and such privilege is entitled to protection. *Moore v. Damos*, 489 S.W.2d 465, 468 (Mo.App.1972)." *Pfefer*, 654 S.W.2d at 127.

U.S. 693, 711, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976). Defamation, when coupled with suspension from a right created by the state, is a denial of a constitutionally protected liberty interest. *See Goss,* 419 U.S. at 574–76, 95 S.Ct. at 736; *Paul v. Davis,* 424 U.S. at 710–712, 96 S.Ct. at 1165–66.

■ The conclusion that plaintiff used excessive force and the consequent disciplinary action were made a part of plaintiff's permanent personnel record. If the charges were false and the disciplinary action was improper, plaintiff's standing with fellow officers could be damaged and it could interfere with his opportunity for promotion. *See Goss,* 419 U.S. at 574–75, 95 S.Ct. at 736. As previously discussed, a police officer suspended for three days is deprived of state created property rights in compensation and other emoluments of continuous employment. Therefore, plaintiff has been deprived of a constitutionally protected liberty interest.

### Procedural Due Process

Having determined that plaintiff was entitled to due process, "the question remains what process is due." *Goss,* 419 U.S. at 577, 95 S.Ct. at 738. "We turn to that question, fully realizing as our cases regularly do that the interpretation and application of the Due Process Clause are intensely practical matters and that '[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.' " *Goss* 419 U.S. at 577–78; 95 S.Ct. at 738 [citations omitted].

In *Goss* the Supreme Court considered the constitutionality of an Ohio statute that permitted school officials to suspend students for up to ten days without a hearing. After determining that both property and liberty interests were implicated by a suspension of ten days or less, the Court stated that at a minimum the Due Process Clause requires

> that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case. The fundamental requisite of due process of law is the opportunity to be heard, a right that has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to … contest. At the very minimum, therefore, students facing suspension and the consequent interference with a protected property interest must be given *some* kind of notice and afforded *some* kind of hearing. Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. [Citations omitted.]

*Goss,* 419 U.S. at 579, 95 S.Ct. at 738; *see also Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

■ The timing and content of the notice and the nature of the hearing depend on the appropriate accommodation of the competing governmental and private interests involved. *Goss,* 419 U.S. at 579, 95 S.Ct. at 738–39; *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903.

Plaintiff's interest here is to avoid an unfair or mistaken interruption in his employment.

> The Due Process Clause will not shield him from suspensions properly imposed, but it disserves both his interest and the interest of the State if his suspension is in fact unwarranted. The concern would be mostly academic if the disciplinary process were a totally accurate, unerring process, never mistaken and never unfair. Unfortunately, that is not the case, and no one suggests that it is. Disciplinarians, although proceeding in utmost good faith, frequently act on the reports and advice of others; and the controlling facts and the nature of the conduct under challenge are often disputed. The risk of error is not at all trivial, and it should be guarded against if that may be done without prohibitive cost or interference with the educational process.

*Goss,* 419 U.S. at 579–80, 95 S.Ct. at 739.

On the other hand, the KCPD has a substantial interest in immediate, effective

discipline "to promote efficiency, foster loyalty and obedience to superior officers, maintain morale, and instill public confidence in law enforcement." *Hughes v. Whitmer,* 714 F.2d 1407, 1419 (8th Cir. 1983) (quoting from *Gasparinetti v. Kerr,* 568 F.2d 311, 315–16 (3rd Cir.1977), *cert. denied,* 436 U.S. 903, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1977)). "[A] police department has a substantial interest in developing 'discipline, *espirit de corps,* and uniformity' within its ranks so as to insure the safety of persons and property." *Hughes,* 714 F.2d at 1419.

A suspension without pay for three days is an important disciplinary tool for less serious infractions of departmental policies. To require extensive, formal hearings before a suspension of three days could be imposed would needlessly distract the KCPD from its law enforcement function. *Shawgo v. Spradlin,* 701 F.2d 470, 476 (8th Cir.1983), *cert. denied,* 104 S.Ct. 404, 78 L.Ed.2d 345 (1983). On the other hand, like the school district in *Goss,* the KCPD can operate with acceptable efficiency and discipline and still afford minimum Due Process requirements. "No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it." *Goss,* 419 U.S. 580, 95 S.Ct. at 739.

■ Therefore, a KCPD police officer may not be constitutionally suspended from employment without pay unless the officer is given 1) oral or written notice of the charge; 2) an explanation of the basis for the charge; and 3) an opportunity to present his/her side of the story. Usually notice of the charges should be given and an opportunity to be heard should be afforded before the suspension is imposed. However, if an officer's continued presence on the job presents a danger to persons or property or a threat to discipline or the law enforcement mission of the KCPD, the necessary notice and hearing should follow as soon as possible. *Goss,* 419 U.S. 582–83, 95 S.Ct. at 740.

The instant case presents considerations at least as compelling as those in *Goss* for not construing the Due Process Clause to require a formal hearing with an opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge or to call witnesses to support the officer's version of the incident. To impose even truncated trial-type procedures might well divert personnel and resources from the KCPD's law enforcement mission and reduce the effectiveness of the prompt imposition of discipline without substantially reducing the risk of erroneous disciplinary action.

On the other hand, requiring effective notice and informal hearing permitting the student to give his version of the events will provide a meaningful hedge against erroneous action. At least the disciplinarian will be alerted to the existence of disputes about facts and arguments about cause and effect. He may then determine himself to summon the accuser, permit cross-examination, and allow the student to present his own witnesses. In more difficult cases, he may permit counsel. In any event, his discretion will be more informed and we think the risk of error substantially reduced.

*Goss,* 419 U.S. at 583–84, 95 S.Ct. at 741.

In Count I of plaintiff's complaint he asserts that he was deprived of rights guaranteed to him by the Due Process Clause because plaintiff was not given adequate notice of the complaint against him and an opportunity to be heard.

■ On the record before the Court, whether plaintiff received effective notice of the charge is disputed. The OCC policy and disciplinary procedures require that the police officer complained against be promptly advised that a citizen complaint has been filed. General Order 80–4. Defendant by affidavit establishes that plaintiff's commanding officer was notified of the citizen's complaint against plaintiff and that, pursuant to departmental policy, plaintiff "should have been" promptly notified of the citizen' complaint and the

charges against him. The imprecise language of defendant's affidavit could be interpreted several ways, e.g., plaintiff was given notice; defendants do not know whether plaintiff was given notice; or plaintiff was not given notice. For purposes of ruling defendants' motion for summary judgment, plaintiff is entitled to the benefit of all reasonable inferences. The most favorable inference for plaintiff is that he was not given notice of the citizen's complaint. Therefore, a material issue of disputed fact exists as to whether plaintiff received proper notice of the charges against him.

There is no express requirement in General Order 80–4 that the officer complained against be given an opportunity to present his/her version of the incident. The absence of such a provision is a serious deficiency in the written procedures. However, in this case plaintiff was given an opportunity to present his version of the incident when IAD took his statement. Assuming that plaintiff had notice of the charge before the statement was taken and assuming that plaintiff was given a full and fair opportunity to tell his side of the story, the minimum requirements of due process may well have been satisfied. The determination whether these assumptions are justified must await the development of a more complete record.

Because of deficiencies in the factual record, summary judgment on Count I is inappropriate.

█ In Count II of plaintiff's complaint he alleges that the Grievance Committee Procedure is unconstitutional because it fails to provide an officer complained against: 1) right to counsel; 2) the right to appeal charges brought by citizens; and 3) the right to appeal the severity of the disciplinary action. For the reasons stated above, the Due Process Clause does not require these procedural protections when an officer is suspended for ten days or less. Therefore, summary judgment against plaintiff and in favor of defendant on Count II of plaintiff's complaint is appropriate.

For the reasons stated above, it is hereby ORDERED that:

1) defendants' motion for summary judgment on Count I is denied; and

2) defendants' motion for summary judgment on Count II is granted against plaintiff and in favor of defendants on plaintiff's complaint.