David A. GARRAGHTY,
Plaintiff-Appellant,

v.

Fred E. JORDAN, Jr., individually and as Regional Administrator, Central Region, Virginia Department of Corrections; Edward Murray, individually and as Deputy Director, Virginia Department of Corrections; Allyn R. Sielaff, individually and as Director, Virginia Department of Corrections, Defendants-Appellees.

No. 86–3718.

United States Court of Appeals,
Fourth Circuit.

Argued April 8, 1987.
Decided Oct. 9, 1987.

Craig Becker (John C. Dempsey, Kirschner, Weinberg & Dempsey, Washington, D.C., on brief), for plaintiff-appellant.

H. Aubrey Ford, III (Philip B. Morris, John D. Epps, Browder, Russell, Morris & Butcher, P.C., Richmond, Va., on brief), for defendants-appellees.

Before RUSSELL and WILKINSON, Circuit Judges, and JOSEPH F. ANDERSON, United States District Judge for the District of South Carolina, sitting by designation.

DONALD RUSSELL, Circuit Judge:

David Garraghty, a Virginia prison Warden, sued his superiors, defendants Jordan, Murray and Sielaff, under 42 U.S.C. § 1983, alleging that they violated his first amendment and due process rights by suspending him from his job without due process and solely to punish him for exercising his first amendment rights of free speech and association. A three day jury trial commenced on August 15, 1986. In its order with respect to the defendants' motion *in limine* and in subsequent rulings during the trial, the court deemed inadmissible certain evidence offered by Garraghty to show an impermissible motive for the suspension and to show Jordan's harsher treatment of Garraghty than of other subordinates for comparable discipline problems. After Garraghty rested his case, the Court directed a verdict for defendants Murray and Sielaff on all claims and for Jordan on the due process claim. The jury subsequently found for Jordan on the first amendment claim as well. On appeal, Garraghty challenges the court's exclusion of certain evidence and the directed verdicts for the defendants. Garraghty does not directly challenge the jury's verdict on his first amendment claim so we will not address the first amendment issues involved in the case.

## I. FACTS

Garraghty, a state employee, is the Warden of the Nottoway Correctional Center in Virginia. At the time of the incident in question, defendant Jordan was his immediate supervisor, holding the position of Regional Administrator. Defendant Murray was the Deputy Director of the Virginia Department of Corrections and defend-

ant Sielaff was the Director of that Department. Beginning in the summer of 1984 and continuing through the time that he was suspended, Garraghty was an outspoken critic of the Department of Corrections and of the then Governor Robb's corrections policy. He was also involved in an attempt to organize state employees. Garraghty incurred some disfavor among his superiors for these actions.

Jordan, at a meeting on May 21, 1985, instructed wardens under his supervision to streamline communications with his office so that all communications from lower level employees would be handled through the wardens within the regional chain of command. On May 24, 1985, which was the Friday of the Memorial Day Weekend, a low level Nottoway personnel official called Jordan regarding a routine personnel matter in contravention of Jordan's prior instructions to wardens. Jordan called Garraghty at about 4:50 P.M. that afternoon to ask why he (Jordan) was still receiving low level callers from Nottoway and also to ask Garraghty to provide information regarding the status of the particular personnel matter. Garraghty, whose shift ended at 4:30, was still in his office and took the call. When Jordan asked Garraghty for the personnel information Garraghty told Jordan that he was off duty and that he would provide Jordan with the information in a few days. When Jordan requested that Garraghty get the information immediately Garraghty exclaimed that he was being "set up" and said several times to Jordan: "make your move." Jordan told Garraghty that he was being insubordinate and demanded that Garraghty drive to Richmond (1½ hours away) that afternoon to discuss the problem. Garraghty replied that he had personal business to take care of and refused Jordan's demand. The exchange grew heated and Jordan hung up the phone. Afterwards, Jordan called Director Sielaff's office for advice concerning the incident. Sielaff summoned Maya Hasagawa, Director of Employee Relations for the Corrections Department, to his office to participate in the conference call. Jordan described the incident and asked what disciplinary measures

he could take. Hasagawa told Jordan that he could suspend Garraghty for up to five days for insubordination, according to the state book on standards of conduct, but cautioned Jordan that he first meet with Garraghty and give Garraghty a chance to explain his conduct. Hasagawa also told Jordan that he should treat Garraghty as he would any warden. Sielaff and Murray concurred with Hasagawa's advice. Jordan then called Garraghty's office and, finding that Garraghty had left for the weekend, left word that Garraghty report to Jordan's office on the following Tuesday.

On Tuesday, Garraghty appeared in Jordan's office with a tape recorder. Attending the meeting were Jordan, Garraghty and Carl Bobrosky, Corrections Department Manager of Operations. Jordan told Garraghty that the meeting was not adversarial and, stating that he was disturbed by his Friday telephone conversation with Garraghty, asked Garraghty to explain his conduct during the telephone conversation. Garraghty and Jordan disagreed as to what exactly had been said during the Friday conversation, and the tone in which things were said, but Garraghty acknowledged that he had refused to provide Jordan with the requested personnel information and to report to Jordan on Friday as ordered. Garraghty offered as his explanation that he had to attend to personal business. Jordan and Bobrosky both testified that Garraghty was belligerent during the meeting, but Garraghty denied this. At some point early in the meeting Jordan realized that Garraghty was recording the conversation, and he told Garraghty to turn off the recorder. Garraghty turned the recorder off, but he later turned it back on without informing Jordan. Finding Garraghty's explanation for his conduct on Friday insufficient to excuse him, Jordan told Garraghty that his conduct constituted insubordination and advised Garraghty that he was suspended for five work days without pay. Virginia's regulations did not provide for an appeal of suspensions of less than ten days so Garraghty had no post-suspension administrative hearing. *See* Va.Code

Ann. § 2.1–114.5 and regulations promulgated thereunder. Garraghty brought this action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief, as well as compensatory and punitive damages.

## II. DISCUSSION

### A. *The Court's Exclusion of Evidence*

■ Garraghty's complaint alleged that Jordan, with the approval of the other defendants, suspended him in retaliation for his criticism of department policies and for his union activities. To support his allegations Garraghty attempted to introduce evidence to show that he was treated dissimilarly from others accused of insubordination and to show that the defendants had sought grounds to remove him because of his speech and union activities. Before trial, the court ruled, after considering the defendants' motion *in limine* to exclude certain evidence, that three types of evidence were to be excluded as irrelevant:

1. Statements or actions by persons other than the named defendants and of which the defendants were unaware;

2. Disciplinary actions taken against other Department of Corrections employees which [were] not alleged to be in retaliation for public statements made by such employees; and

3. Actions engaged in by other Department of Corrections employees for which no disciplinary steps were taken, but which were not comparable to the act that allegedly formed the basis for plaintiff's suspension.

Later, during the trial, when Garraghty proffered to the court such evidence as well as evidence of the defendants' alleged mistreatment of other corrections department employees, the court excluded the evidence as inadmissible under Federal Rules of Evidence 402, 403 and 404. Also during the trial, Garraghty attempted to introduce evidence of statements and actions of the defendants occurring after the suspension in order to prove the defendants' improper motive for the suspension. The district court excluded this evidence as irrelevant to the issue of the May suspension. Garraghty asserts that the court erred in excluding the evidence. He states that the evidence was relevant and probative to prove the defendants' improper motive for the suspension. We find Garraghty's arguments without merit.

This court will defer to a trial court's Rule 403 balancing unless it is an arbitrary or irrational exercise of discretion. *United States v. Penello,* 668 F.2d 789, 790 (4th Cir.1982). And the same standard of review applies to a trial court's rulings under Rule 404(b). *United States v. Greenwood,* 796 F.2d 49, 53 (4th Cir.1986). The Rules of Evidence provide that the district court *may* admit *relevant* Rule 404(b) evidence to prove intent or motive if the court does not deem the evidence inadmissible under Rule 403 as too confusing or unfairly prejudicial. The evidence excluded by the court on the defendants' motion *in limine* was clearly irrelevant as well as confusing. Some of the later proffered evidence was also inadmissible under Rule 404(b) because it was intended to show that, in suspending Garraghty, the defendants acted in conformance with their prior acts. The court properly excluded this evidence. The court's exclusion of post-suspension statements and actions by the defendants was proper. Although some of the evidence was arguably relevant to show motive, its relevance was tenuous at best and the court could rationally find that its relevance was outweighed by the likelihood that the evidence would confuse the jury. Under these circumstances, we cannot find that the court's decisions were either arbitrary or irrational. We find, therefore, that the court did not abuse its discretion in excluding the proffered evidence.

### B. *The Due Process Claim*

■ Garraghty's second claim is that the court erred in directing a verdict for the defendants on his due process claim. He contends that the defendants violated his right to due process because Jordan, with the other defendants' approval, did not inform him before or at the beginning of the Tuesday meeting of the charges against him and did not give him a meaningful opportunity to respond to the charges of

insubordination before a neutral decision maker. Garraghty contends that Jordan ordered him to appear before Jordan without explanation and misled him to believe that the meeting was nonadversarial so that Garraghty did not believe it necessary to offer more than a cursory explanation for his conduct on Friday. He claims that if he had known that Jordan was considering disciplining him, he would have explained in detail the reasons for his conduct and would have otherwise more vigorously defended himself. Additionally, Garraghty asserts that he was denied due process because Jordan, the victim of Garraghty's insubordination, the initiator of the disciplinary proceeding and the sole witness to the Friday telephone conversation, was also the person who acted as judge in the informal proceeding.

We agree with the district court that Garraghty received "all the hearing he was entitled to." In examining Garraghty's claim, we must determine (a) whether the discipline imposed deprived Garraghty of a property interest protected by the fourteenth amendment and (b) if so, whether the manner in which the discipline was imposed satisfied constitutionally mandated protections. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Garraghty was, at the time of his suspension, a classified civil servant of the State of Virginia who could be terminated or suspended only for cause. *See* Va.Code Ann. § 2.1–114.5:1 and rules promulgated thereunder by the Department of Personnel and Training.[1] Garraghty, therefore, had a constitutionally protected property interest in his continued employment with the Virginia Department of Corrections. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Detweiler v. Virginia Dept. of Rehabilitative Services,* 705 F.2d 557 (4th Cir.1983). Given that a property interest existed, the state could not deprive Garraghty of that interest without due process of law. *Louder-*

105 S.Ct. at 1495; *Roth,* 408 U.S. at 576, 92 S.Ct. at 2708.

It is well settled that due process requires that a public employee who has a property interest in his employment be given notice of the charges against him and a meaningful opportunity to respond to those charges prior to his discharge. *Loudermill,* 105 S.Ct. at 1495; *Arnett v. Kennedy,* 416 U.S. 134, 170–71, 94 S.Ct. 1633, 1652, 40 L.Ed.2d 15 *reh'g denied,* 417 U.S. 977, 94 S.Ct. 3187, 41 L.Ed.2d 1148 (1974). The deprivation caused by Garraghty's five day suspension was much less severe than the deprivation caused by a discharge, but "the length and consequent severity of a deprivation, while another factor to weigh in determining the appropriate form of a hearing, 'is not decisive of the basic right' to a hearing of some kind." *Goss v. Lopez,* 419 U.S. 565, 576, 95 S.Ct. 729, 737, 42 L.Ed.2d 725 (1975), *quoting Fuentes v. Shevin,* 407 U.S. 67, 86, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556 (1972). So long as a deprivation is not *de minimis,* "its gravity is irrelevant to the question whether account must be taken of the Due Process Clause." *Goss,* 419 U.S. at 576, 95 S.Ct. at 737. We find that Garraghty's temporary suspension, though lasting only five days, was not a *de minimis* deprivation, for with that suspension he lost compensation and other emoluments of the office for the period of the suspension. *See Boals v. Gray,* 775 F.2d 686 (6th Cir.1985) (five day suspension allegedly ordered to chill public employee's exercise of his right to free speech is not *de minimis*); *see also Click v. Board of Police Comm'rs,* 609 F.Supp. 1199 (W.D.Mo. 1985) (three day suspension of policeman is not *de minimis*); *but cf. Carter v. Western Reserve Psychiatric Habilitation Center,* 767 F.2d 270 (6th Cir.1985) (a two day suspension in the manner of routine discipline is not significant enough to trigger protections of the due process clause). Having determined that Garraghty was entitled to some form of due process, we next consider the requisite process to which Garraghty was entitled.

---

1. The Virginia Code was later amended to exempt state wardens from the state civil service provisions on employee discipline and griev-ance procedures. Va.Code Ann. § 2.1–116 (as amended 1985).

At a minimum, due process requires that an employee be given notice of the charges against him and " 'some kind of a hearing' " before being disciplined by suspension. *Loudermill*, 105 S.Ct. at 1493, *citing Roth*, 408 U.S. at 569–70, 92 S.Ct. at 2705. "[T]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Loudermill*, 105 S.Ct. at 1495, *quoting Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). The timing, content of the notice and the form of the hearing will depend upon a proper balancing of the competing interests involved. *Goss*, 419 U.S. at 579, 95 S.Ct. at 738–39.

In *Loudermill*, a tenured public employee discharge case in which a post-termination hearing was available, the Court determined that prior to termination, "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill*, 105 S.Ct. at 1495. The Court arrived at these procedural requisites by balancing the competing interests of (a) the employee in retaining employment, (b) the government in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and (c) the risk of an erroneous termination. *Id.*, at 1494, *citing Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

In an earlier case, *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Court addressed procedural due process requirements in the context of a student's suspension from school. Having found that state law gave the student a property interest in his education and that a ten day suspension was not a *de minimis* deprivation of that interest, the Court held as a general rule that prior to suspension due process requires "that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side

of the story." *Id.*, 419 U.S. at 581, 95 S.Ct. at 740. The Court stated:

> There need be no delay between the time "notice" is given and the time of the hearing. In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. We hold only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is.

*Id.*, 419 U.S. at 582, 95 S.Ct. at 740. In balancing the competing interests involved in the case, the Court found that despite the student's interest in not being unfairly excluded from the educational process, "further formalizing the suspension process and escalating its formality and adversary nature may not only make it too costly as a regular disciplinary tool but also destroy its effectiveness as part of the teaching process." *Id.*, at 583, 95 S.Ct. at 741.

Garraghty's deprivation is less severe than that of the terminated employee in *Loudermill*, and more severe than that of the suspended student in *Goss*. Due process, therefore, required pre-deprivation proceedings no more formal and extensive than those required in *Loudermill*, and no less extensive than the proceedings delineated in *Goss*. In determining the process due Garraghty, we are aided by a recent Sixth Circuit decision which involved similar circumstances.

In *Boals v. Gray*, 775 F.2d 686 (6th Cir. 1985), the court examined the process due a state correctional officer who was suspended by the defendant superintendent of the reformatory for insubordination. Shortly before the suspension, the plaintiff, Boals, had joined a union and had actively encouraged others to join. Boals became angry when he received a parking ticket on his car since he had parked his car in the same spot many times before without incident. Apparently believing the ticket to be a form of harassment, he took the ticket to the security office and asked if the defendant superintendent had ordered that tickets be given out. When an officer replied that

the superintendent had ordered that tickets be written, Boals replied, "[W]hy don't you take this and tell him to stick it up his ass." Shortly thereafter, Boals was told to report to the defendant's office. When he entered the office, the defendant, who was in the office with two other officials, held up the ticket and asked Boals if he had seen the ticket before and if he had made the belligerent and insulting comment. Boals responded "yes" to both questions, and the defendant immediately told Boals that he was suspended for three days. When Boals protested that he wanted his lawyer the defendant told him that he was suspended for five days. Since the grievance procedures did not provide for administrative appeal of a short term suspension, Boals brought suit against the defendant under 42 U.S.C. § 1983. The district court found that Boals had been deprived of a protected property interest in his job without due process of law. The court of appeals reversed the lower court, finding that Boals was not taken by surprise at the perfunctory hearing, that Boals was informed of the charges against him and given an opportunity to respond, and that since Boals did not deny the charges, the procedure by which Boals was suspended met constitutional due process standards.

With these teachings in mind, we now review the case before us to determine whether constitutional due process principles were satisfied. In reviewing Garraghty's claim, we find it appropriate to apply the balancing test used in *Loudermill*. That test balances the competition between (a) the employee's interest in his employment, (b) the government's interest in an expeditious and effective tool to discipline unsatisfactory employees, (c) the government's interest in the avoidance of undue administrative or fiscal burdens, and (d) the risk of an erroneous deprivation of the employee's interest. *Id.*, 105 S.Ct. at 1494.

Recognizing these competing interests, we first address the notice requirement. Garraghty contends that he was not informed of the charges against him so that he could meaningfully respond to the charges. We do not agree. Constitutional

due process requires only that an employee be given notice appropriate under the circumstances. *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). During the Friday telephone conversation which prompted Garraghty's suspension, after Garraghty refused to provide Jordan with the requested personnel information Jordan ordered Garraghty to meet with him immediately, Garraghty refused, and Jordan hung up. Jordan called Garraghty about an hour later and, upon learning that Garraghty had left for the weekend, left a note instructing Garraghty to report to Jordan's office on Tuesday morning of the following week. Upon receiving the note, Garraghty must have known that he was being called to Jordan's office to discuss his insubordination. That Garraghty appeared at Jordan's office with his tape recorder in hand implies as much. As the meeting opened, Jordan, with a witness present, confronted Garraghty about his earlier behavior. Garraghty, therefore, had at that time, if not before, actual notice of what he was accused of doing and the basis for the accusation. *Goss*, 419 U.S. at 582, 95 S.Ct. at 740.

When asked about the incident, Garraghty acknowledged that he had refused to provide the personnel information when requested, that he had refused to report to Jordan's office on Friday as ordered, and that he had repeatedly told Jordan to "make his move." Although there was some disagreement as to who was abrasive during the telephone conversation, Garraghty admitted the acts of insubordination for which he was suspended. When given an opportunity to explain his behavior he merely stated that he had personal business to attend to Friday afternoon. Jordan, finding Garraghty's excuse insufficient, then suspended him. Thus, Garraghty was given an opportunity to be heard, to "present his side of the story," before Jordan suspended him. *Goss*, 419 U.S. at 581, 95 S.Ct. at 739–40. Contrary to Garraghty's allegation, Jordan's statement that the informal meeting was nonadversarial was not misleading so as to throw

Garraghty off guard, but was merely an attempt to set a tone for the meeting that would facilitate frank communication rather than hostility and defensiveness.

Due process principles did not require that a neutral decision-maker, rather than Jordan, make the decision to suspend Garraghty. A pre-deprivation proceeding need not be a full evidentiary hearing with witnesses and a neutral decision maker so long as the employee is given an opportunity to answer the charges. *See Loudermill*, 105 S.Ct. at 1495. The deprivation caused by a short-term suspension, when balanced with the government's interest in expeditious and effective discipline and the administrative burden of providing a neutral decision-maker for every routine suspension, does not warrant pre-deprivation proceedings before a neutral party. Realities of the work place, especially in the paramilitary environment of corrections departments, require that authority be respected and that discipline be swift. "[F]urther formalizing the suspension process and escalating its formality and adversary nature may not only make it too costly as a regular disciplinary tool but also destroy its effectiveness as part of the [disciplinary] process." *Goss*, 419 at 583, 95 S.Ct. at 741.

The Sixth Circuit, in *Boals*, rejected the district court's finding that due process requires pre-deprivation hearings before neutral decision-makers in suspension cases when insubordination is admitted. *Boals*, 775 F.2d at 690–91. And the Supreme Court's decisions in *Goss* and *Loudermill* do not support such a requirement. Even in termination cases, most courts have not required that pre-termination hearings be conducted by a neutral party so long as grievance procedures provide for a post-termination hearing before a neutral body. *See Loudermill*, 105 S.Ct. at 1494–97. Since we find that the informal pre-deprivation hearing held in Jordan's office satisfied due process requirements, we affirm the court's grant of directed verdicts for the defendants on Garraghty's due process claim.

### C. The Directed Verdicts on Garraghty's First Amendment Claims

Garraghty also challenges the district court's directed verdicts for Murray and Sielaff, Jordan's supervisors, on the first amendment claims. Garraghty contends that the directed verdicts were improper because there was conflicting evidence concerning substantial issues such that reasonable people could have found that Murray and Sielaff violated his first amendment rights.

Although it is true that a court should not direct a verdict for a defendant if, viewing the evidence and drawing reasonable inferences in the light most favorable to the nonmoving party, the court finds substantial evidence supporting liability, when the court finds no such evidence a directed verdict is proper. *Richmond Television Corp. v. United States*, 354 F.2d 410, 414 (4th Cir.1965), *overruled in part on other grounds, NCNB Corp. v. United States*, 684 F.2d 285 (4th Cir.1982). Garraghty contends that Murray and Sielaff were directly involved in the decision to suspend him. The evidence, however, is clearly to the contrary. Even when viewed in the light most favorable to Garraghty, the evidence shows that Murray and Sielaff, who frowned upon Garraghty's criticism of the Governor of Virginia and the State's corrections policy, nevertheless advised Jordan in conversations immediately after Jordan's Friday telephone conversation with Garraghty that Jordan should treat Garraghty the same as he would any warden under similar circumstances. This evidence is woefully insufficient to support Garraghty's first amendment claims against Murray and Sielaff. The court, therefore, properly entered directed verdicts for these defendants on the first amendment claims.

Accordingly, since we find that Garraghty's claims are all without merit, the judgment of the district court is

AFFIRMED.