John Quincy GILLARD, Plaintiff–Appellant,

v.

Stephen H. NORRIS, Commissioner of the Tennessee Department of Corrections, et al., Defendants–Appellees.

No. 88–5042.

United States Court of Appeals, Sixth Circuit.

Submitted Aug. 16, 1988.

Decided Sept. 23, 1988.

John Quincy Gillard, Memphis, Tenn., pro se.

Mary Kendall, Kallaher, Asst. Atty. Gen., Linda A. Ross, Nashville, Tenn., for Stephen H. Norris, Com'r. of the Tennessee Dept. of Corrections, Bruce McDonald, Warden, of the West Tennessee Reception Center, Billy Compton, Associate Warden of Sec. at the West Tennessee Reception Center, Charles Banks, Captain of Sec. at the West Tennessee Reception Center, Oscar Exum, Lieutenant at the West Tennessee Reception Center, Judy Grant, Lieutenent at the West Tennessee Reception Center, Jessis Griggs, Corporal at the West Tennessee Reception Center.

Before MARTIN, GUY and NELSON, Circuit Judges.

PER CURIAM.

Plaintiff, John Quincy Gillard, appeals the district court's dismissal of his suit challenging the constitutionality of disciplinary proceedings imposed by his employer, the Tennessee Department of Corrections. The district court concluded that the reprimands and temporary suspension plaintiff received from his employer were not issued in violation of plaintiff's right to procedural due process, that issuance of the reprimands and temporary suspension did not result in a violation of plaintiff's right to equal protection of the law, that plaintiff had not been denied his right to petition the government for redress of his grievances, and that the Tennessee statute pursuant to which plaintiff was issued his reprimands and temporary suspension is not unconstitutional. We agree and affirm.

## I.

Plaintiff filed this action pursuant to 42 U.S.C. §§ 1983 and 1985 in the United States District Court, Western District of Tennessee, seeking compensatory damages, punitive damages, and attorneys fees arising out of the defendants' alleged violations of plaintiff's first, fifth, and fourteenth amendment rights. Plaintiff is a correctional officer at the West Tennessee Reception Center, a state penal institution located in Memphis, Tennessee. Defendant Stephen H. Norris is the Tennessee Commissioner of Corrections, in Nashville, Ten-

nessee. Other defendants are the warden of the West Tennessee Reception Center and certain other officials of that institution. Plaintiff asserts that violations of his constitutional rights resulted directly from certain disciplinary proceedings instituted against him at the West Tennessee Reception Center, which occurred during the period between October, 1985, through the end of June, 1986. The disciplinary proceedings in question were summarized in the report of the magistrate as follows:

> On October 4, 1985 the plaintiff was given a written reprimand for bringing a knife into the institution. He filed a grievance protesting the reprimand, which was ultimately reviewed by Commissioner Norris. Norris decided that the reprimand should stand. In March of 1986 a second appeal was made to Commissioner Norris, with new information, and Norris again decided that the reprimand should stand.

> In November of 1985 the plaintiff was again disciplined, this time for coming to work without the proper "key chit." The institution officials gave him a three day suspension, which he likewise appealed to Commissioner Norris. Norris reduced the three day suspension to a written reprimand.

> In January of 1986 the plaintiff was given another reprimand for leaving his key chit at home. He appealed that reprimand to Commissioner Norris, but Commissioner Norris let it stand.

> In February of 1986 the plaintiff received another written reprimand. The plaintiff claimed that there were certain errors in the reprimand as written and he discussed those with one of the defendant officials at West Tennessee Reception Center. He received a corrected copy of the reprimand on February 10, 1986. He requested a review of the corrected reprimand in March of 1986. After a review Commissioner Norris let the reprimand stand.

> In April of 1986 the plaintiff was given a written reprimand "for calling the wrong count [i.e., inaccurately counting the number of inmates]," and he again requested review by Commissioner Norris, who let the reprimand stand.

> In May of 1986 the plaintiff was terminated for misconduct that allegedly occurred on April 24, 1986. On June 26, 1986 the plaintiff was reinstated with a three day suspension. At the time he filed this suit on October 3, 1986 he had a proceeding pending before the Tennessee Civil Service Commission concerning the suspension.

Pursuant to 28 U.S.C. § 636(b)(1)(B), this case was referred to a magistrate for a report and recommendation. Subsequently, the magistrate issued the report quoted above, recommending dismissal of plaintiff's case. In response, plaintiff filed objections to the magistrate's report. On November 19, 1987, the district court issued an order adopting the magistrate's report and recommendation and dismissing plaintiff's complaint. Plaintiff now appeals, claiming that the district court erred by failing to find (1) that plaintiff's fourteenth amendment procedural due process right was violated by issuance of the written reprimands and imposition of the resulting three-day suspension; (2) that the defendants' actions denied plaintiff his fourteenth amendment right to equal protection; (3) that the defendants denied plaintiff of his first amendment right to petition the government for redress of his grievances; and (4) that Tenn.Code Ann. § 4–3–603 and the administrative policies promulgated thereunder unconstitutionally denied plaintiff of his right to due process of law. We shall now proceed to review each of the claims raised by plaintiff on appeal, *seriatim.*

## II.

A. Whether the Defendants' Issuance of Reprimands and Subsequent Suspension of Plaintiff Violated Plaintiff's Fourteenth Amendment Right to Due Process of Law

■ Plaintiff argues that pursuant to the due process clause of the fourteenth amendment, a public employer may not issue written reprimands and thereafter suspend an employee without giving the em-

ployee: (1) the right to respond orally to the charges; (2) the right to respond before an impartial decision-maker; (3) the right to have an attorney present at a proceeding before an impartial decision-maker; (4) the right to subpoena witnesses to appear before the decision-maker; and (5) the right to cross-examine or directly confront his or her accusers. In examining plaintiff's due process claim, we must first determine whether the issuance of the reprimands and subsequent suspension deprived plaintiff of a property interest protected by the fourteenth amendment. If we find that such a property interest is indeed at stake, we must then determine whether the manner in which the discipline was imposed satisfied constitutionally mandated protections. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

At the time of issuance of the reprimands and the three-day suspension, plaintiff was a Tennessee civil service employee who could not be dismissed or demoted on the basis of any "nonmerit" factor. Tenn. Code Ann. § 8–30–327 (repealed July 1, 1986).[1] Plaintiff is therefore considered to have possessed a constitutionally protected property right in continued employment. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 539, 105 S.Ct. 1487, 1491–92, 84 L.Ed. 494 (1985).

This court has previously had occasion to examine the question of whether a temporary suspension from employment, as distinguished from a discharge from employment, is significant enough to trigger the protections of the due process clause. In *Carter v. Western Reserve Psychiatric Rehabilitation,* 767 F.2d 270, 272 n. 1 (6th Cir.1985), we found that although a routine disciplinary two-day suspension without pay constituted a deprivation of property in theory, it was a *de minimis* deprivation not deserving of due process consideration. Soon thereafter, in *Boals v. Gray,* 775 F.2d

686, 697 (6th Cir.1985), Judge Wellford noted in his concurrence that the initial suspension of the employee for three days was a *"de minimis* property deprivation not deserving of due process consideration," but that when the employer decided to add two more days to the employee's suspension, resulting in a total suspension of five days, the dismissal was no longer a *de minimis* deprivation and the plaintiff therein was entitled to some form of due process. *Accord Garraghty v. Jordan,* 830 F.2d 1295, 1299 (4th Cir.1987) ("Garraghty's temporary suspension, though lasting only five days, was not a *de minimis* deprivation, for with that suspension he lost compensation and other emoluments of the office for the period of the suspension"); *cf. Click v. Board of Police Comm'rs,* 609 F.Supp. 1199 (W.D.Mo.1985) (three-day suspension of policeman is not *de minimis* ).

■■■ As a result of the accumulation of the disciplinary actions taken against him, plaintiff was suspended from work for three days.[2] Plaintiff's suspension is therefore quite similar to the two-day routine disciplinary suspension experienced by the plaintiff in the *Carter* case, with the exception that the duration of Gillard's suspension was one day longer than that of the employee in *Carter.* We are not of the opinion that merely because a routine disciplinary suspension for employment lasts three days rather than two, the severity of the deprivation suffered increases to such an extent that due process protections are triggered. Rather, we find that the situation presented in this case is very similar to that of the *Carter* case, and we are bound by that precedent. Nevertheless, even in the event that we were to conclude that plaintiff's three-day suspension amounted to a deprivation of such severity that his due process rights were triggered, we con-

---

**1.** At the time of repeal of Tenn.Code Ann § 8–30–327, Tenn.Code Ann. § 8–30–331 was enacted. Section 8–30–331(a) states in pertinent part: "Employees who have successfully completed their probationary period have a 'property right' to their positions."

**2.** Tennessee Department of Personnel rule number 1120–10–1.7 was promulgated pursuant to Tenn.Code Ann. § 8–30–203 and provides for a progressive system of discipline. The employee's first infraction is addressed by an oral warning. Subsequent infractions are addressed respectively by written warning, suspension without pay, and finally dismissal.

clude that plaintiff received the requisite process to which he was entitled.

In *Loudermill*, the Supreme Court determined that, at a minimum, due process requires that an employee be given notice of the charges against him and some type of hearing prior to discipline by termination. 470 U.S. at 542, 105 S.Ct. at 1493. In considering the nature of the "hearing" required in this context, the Court recognized that " '[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.' " *Id.* at 545, 105 S.Ct. at 1495 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)). The Court then proceeded to balance the following competing interests: (a) that of the employee in retaining his employment; (b) that of the government in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens; and (c) the risk of an erroneous termination. *Id.* 470 U.S. at 543–44, 105 S.Ct. at 1493–95. Ultimately, the Court concluded in *Loudermill* that a tenured public employee to whom a post-termination hearing is available [3] is entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and the opportunity to present his side of the story." *Id.* at 546, 105 S.Ct. at 1495.

Earlier the Supreme Court had occasion to address the procedural due process requirements which arise in the context of a student's suspension from school and held that, prior to suspension, due process requires "that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an

opportunity to present his side of the story." [4] *Goss v. Lopez*, 419 U.S. 565, 581, 95 S.Ct. 729, 740, 42 L.Ed.2d 725 (1975). In reaching this conclusion, the Court balanced the competing interests in the case and found that, despite the student's interest in not being unfairly excluded from the educational process, "further formalizing the suspension process and escalating its formality and adversary nature may not only make it too costly as a regular disciplinary tool but also destroy its effectiveness as part of the teaching process." *Id.* at 583, 95 S.Ct. at 741.

Gillard's three-day routine disciplinary suspension without pay is less severe than that of the terminated employee in *Loudermill*. Therefore, due process requires pre-deprivation proceedings no more formal and extensive than those required in *Loudermill*. Gillard's suspension is arguably more severe than that of the suspended student in *Goss* and, therefore, the required pre-deprivation proceedings may be no less extensive than the proceedings delineated in *Goss*. To reiterate, in the event that we had found that the deprivation resulting from Gillard's three-day suspension was not a *de minimis* deprivation, due process would require, at a minimum, something between the requisite procedures of *Loudermill*, i.e., oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to present his side of the story; and the requisite procedures of *Goss*, i.e., oral or written notice of the charges against the individual and then, if the individual denies them, an explanation of the authorities' evidence and an opportunity for the individual to present his side of the story. [5]

---

**3.** Gillard was not dismissed during the course of the disciplinary procedures in question. Had he been "dismissed or demoted," Gillard was provided by statute the right to a post-termination and/or post-demotion hearing before the Civil Service Commission. Tenn.Code Ann. § 8–30–327 (repealed July 1, 1986). *See infra* note 9.

**4.** The Court first concluded that state law gave the student a property interest in his education, and that a ten-day suspension from school was

not a *de minimis* deprivation of that interest. *Goss v. Lopez*, 419 U.S. 565, 581, 95 S.Ct. 729, 739–40, 42 L.Ed.2d 725.

**5.** *Cf. Boals v. Gray*, 775 F.2d 686 (6th Cir.1985), in which the court concluded that the procedure by which the employee was suspended met constitutional standards because the employee had been informed of the charges against him and provided the opportunity to respond, and the employee did not deny the charges.

Applying these procedural due process requirements to the case before this court, we note that Gillard does not allege that the defendants failed to give him notice of the charges against him. Rather, plaintiff challenges the adequacy of his opportunity to respond to the charges against him prior to issuance of the reprimands and imposition of the suspension. While plaintiff admits that he "has a right to submit any documentation to rebut the allegation contained in the written reprimand," he claims that, in order to effectively defend himself, he has a right to a full hearing in which he may express his position orally before a neutral decision-maker.

In *Loudermill,* the Court was dealing with an employment termination and held that, even in that situation, the employee was not entitled to a formal hearing prior to discharge. In reaching this conclusion, the Court reasoned: "In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action...." *Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495 (citing *Mathews v. Eldridge,* 424 U.S. 319, 343, 96 S.Ct. 893, 906-07, 47 L.Ed.2d 18 (1976)). We agree with the district court's conclusion that a requirement of a full hearing before issuance of a reprimand or imposition of a routine disciplinary suspension would unduly impede the operation of state penal institutions. As the Fourth Circuit recently stated in a case similar to the one now before this court: "Realities of the work place, especially in the paramilitary environment of corrections departments, require that authority be respected and that discipline be swift." *Garraghty,* 830 F.2d at 1302.

Nor are we persuaded by plaintiff's contention that his constitutional rights have been violated because he has not been allowed the opportunity to respond orally, rather than in writing, to the charges against him. Plaintiff cites no authority for his argument in this regard, and we are not persuaded that plaintiff has a fourteenth amendment right to respond orally to the charges against him when another reasonable means to respond is made available.

Finally, plaintiff claims that his fourteenth amendment right to due process was violated because he was "denied an impartial decision-maker." [6] Plaintiff's argument is foreclosed, however, by a recent decision issued by this court sitting *en banc. Duchesne v. Williams,* 849 F.2d 1004 (6th Cir.1988). In *Duchesne,* this court addressed the question of whether a municipal employee must "receive a pretermination hearing *before a neutral and impartial decision maker* rather than before the supervisor who fired him?" *Id.* at 1005 (emphasis in original). This court found that a hearing, prior to termination, which takes place before the supervisor who fired the employee, satisfies due process. The conclusion reached in *Duchesne* applies with even greater force in this case, where the employee does not face termination but faces only a routine disciplinary suspension.

B. Whether the Defendants' Issuance of Reprimands and Suspension of Plaintiff Violated Plaintiff's Fourteenth Amendment Right to Equal Protection

 Plaintiff claims that the defendants' imposition of the disciplinary action in question violated plaintiff's right to equal protection under the fourteenth amendment. Although plaintiff's complaint fails to specify the nature of his claim for denial of equal protection, in his response to the defendants' motion to dismiss filed in the court below, plaintiff described the basis of his claim as follows: "Plaintiff was denied equal protection, in that other officers have made miscounts and did not receive the disciplinary action of *terminations."* (Emphasis added).[7] In response to this argu-

---

**6.** A Tennessee Department of Corrections employee who receives a written reprimand has thirty days to request a review in writing by the agency's appointing authority, which is the Commissioner of Corrections, defendant Stephen Norris, or his designee.

**7.** Plaintiff elaborated somewhat, in his objections to the magistrate's report, by stating: "At approximately the same time a white co-worker of plaintiff, namely, officer Fowler, had three miscounts within one week and was only issued oral reprimands on each occasion; finally on

ment, the magistrate correctly observed that while Gillard's statement regarding the treatment of other officers may be accurate, Gillard himself did not receive a termination in the final analysis. He received only a three-day suspension. The magistrate also correctly observed that Gillard made no suggestion that any other officer to whom he compared himself had an employment history which included, in addition to the miscounts, introduction of a weapon into the prison and arrival at work without his keys on more than one occasion. Therefore, plaintiff has failed to demonstrate that the defendants treated similarly situated individuals in a disparate manner, and has therefore failed to state a cause of action for denial of equal protection.

C. Whether Plaintiff was Denied His First Amendment Right to Petition the Government for Redress of His Grievances

■ The right to petition the government for redress of grievances is grounded in the first amendment, and generally includes the right of every citizen to access to the courts. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). The clause also guarantees every citizen the right to petition for redress of grievances, through available procedures, any department of the government, including state administrative agencies. *See, e.g., Gearhart v. Thorn*, 768 F.2d 1072 (9th Cir.1985).

Plaintiff claims that he has been denied his first amendment right to petition the government for redress of his grievances because at the time plaintiff was issued the reprimands in question,[8] Tennessee statutes did not provide for Civil Service Com-

mission review of reprimands.[9] Plaintiff concedes that he "availed himself to all procedures available under the Department of Corrections, Department of Personnel, State of Tennessee." He contends, however, that those procedures did not adequately protect his rights. We concluded in Part A of this opinion that plaintiff's fourteenth amendment right to procedural due process was not violated by the manner in which the disciplinary measures in question were administered. That conclusion was based on the reasoning that only a *de minimis* deprivation of plaintiff's property rights was caused by plaintiff's three-day suspension, and that even if the deprivation was of such severity that plaintiff's procedural right to due process was triggered by issuance of the reprimands, the requirements of the due process clause of the fourteenth amendment were met. Therefore, we conclude that because plaintiff was not impeded in exercising his right to use the procedures available to challenge his reprimands before the Department of Corrections and the Department of Personnel, and because those available procedures adequately provided for the exercise of plaintiff's right to due process (not to mention the fact that plaintiff's exercise of those rights resulted twice in a reduction of the charges against him), plaintiff's first amendment right to petition the government for redress of his grievances was not violated. In sum, since the state has not affirmatively prevented him from petitioning, there is no violation of his first amendment rights.

D. Whether the Department of Corrections Administrative Policies and Procedures, Pursuant to Which Plaintiff was Issued his Reprimands, Violate Due Process

The Tennessee Department of Corrections administrative procedure pursuant to

---

his fourth miscount he was issued a written reprimand."

**8.** At the time that the written reprimands were issued to plaintiff, Tenn.Code Ann. § 8–30–327 (repealed July 1, 1986) allowed a public employee who was "dismissed or demoted" to appeal for review of that action before the Civil Service Commission. Tenn.Code Ann. § 8–30–328, which became effective July 1, 1986, apparently

would extend the availability of review by the Civil Service Commission to encompass any civil service employee "grievance or complaint."

**9.** Plaintiff confines his first amendment argument to the denial of his right to petition the government for redress concerning "reprimands." Both parties have represented that plaintiff's three-day suspension is the subject of a Civil Service Commission review.

which plaintiff was issued his reprimands [10] was created with the purpose of providing employees a forum in which to contest written reprimands. Pursuant to this procedure, an employee who receives a written reprimand is allowed thirty days in which to request, in writing, a review by the agency's appointing authority or designee. The request for review is to include documentation of any mitigating circumstances which the employee believes will show that the reprimand was undeserved. Thereafter, within ten working days of receipt of the request for review, the Commissioner or his designee must respond to the employee's request in writing. As we discussed extensively in Part A of this opinion, the mere issuance of written reprimands does not trigger the protections of the due process clause [11] and, even if a sufficient deprivation of plaintiff's property rights was found to result from the issuance of the written reprimands, the challenged Department of Corrections procedures adequately protected plaintiff's due process rights.

AFFIRMED.

---

**10.** The procedure in question was promulgated pursuant to Tenn.Code Ann. § 4–3–603, and Tennessee Department of Personnel Rules, ch. 1120–11–3.

**11.** *Accord Sullivan v. Brown,* 544 F.2d 279, 283 (6th Cir.1976) (a tenured teacher's transfer and recorded reprimand did not deprive her of a liberty interest protected by the fourteenth amendment).