See also, 725 F.Supp. 278.

**James B. LINDSAY, III, by Erwina M. LINDSAY, Guardian ad Litem for James B. Lindsay, III, Plaintiff,**

v.

**PUBLIC SERVICE COMPANY OF NORTH CAROLINA, INCORPORATED, Defendant.**

No. C–C–88–113–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

March 15, 1990.

Daniel A. Speights, William A. Jordan, Speights & Runyan, Hampton, S.C., Bob Warren, Black Mountain, N.C., for plaintiff.

Mel J. Garofalo, John Brim Smith, Hedrick Eatman Gardner & Kincheloe, Charlotte, N.C., for defendant.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER came on to be heard and was heard before the undersigned and a jury at Charlotte, North Carolina on March 5, 6, and 7, 1990. The Plaintiff was represented by Bob Warren of the North Carolina Bar and by C. Alan Runyan and William A. Jordan of the South Carolina Bar. The Defendant was represented by Mel J. Garofalo and John Brim Smith of the North Carolina Bar. At the close of the Plaintiff's case, Defendant Public Service Company of North Carolina, Incorporated (PSC) made a motion for a directed verdict under Rule 50 of the Federal Rules of Civil Procedure.

## I. NATURE OF CASE

This is a personal injury suit by the Plaintiff's guardian. According to the Plaintiff's allegations, the Plaintiff's ward (hereafter "Lindsay") was injured as a result of the inhalation of carbon monoxide (hereafter "CO") that escaped from a defective gas operated heater in Room # 5 at the U.S. 21 Motel (hereafter "the Motel") in Statesville, North Carolina. Lindsay was a registered guest at the Motel on the night of March 12, 1985. The Plaintiff bases this cause of action on the theories of negligence and *res ipsa loquitur*.

## II. THE PLAINTIFF'S EVIDENCE

Plaintiff's evidence in so far as it is necessary to a decision in this matter established the following facts. In approximately 1960, the owner of the Motel at that time, Donald Goforth, had installed a gas-fired wall heater in Room # 5 of the Motel. The Plaintiff failed to produce any evidence that PSC had any responsibility for the installation of the gas heater. Since approximately 1960, PSC supplied gas to the Motel. Until 1981, PSC made service calls to the Motel upon the request of its customer.

In 1981 Bob Shah purchased the Motel. In 1981, at Shah's request, a PSC serviceman went to the Motel and lit the pilot lights on the heaters in each of the rooms at the Motel. There was no evidence that after 1981 PSC made any service calls to Room # 5 at the Motel. After 1981 Shah elected to light the pilot lights on the gas heaters at the Motel, including the gas heater in Room # 5, and perform such maintenance work as he thought necessary. The Plaintiff failed to produce evidence that after 1981, PSC servicemen were requested to inspect, or actually inspected, the heater in Room # 5 or any of the units at the Motel, or perform any other service.

Testimony during the Plaintiff's case also revealed that Shah had hired roofers to place a new roof on the Motel, including the area over Room # 5. The roofers performed their work at or about the time when Lindsay was injured. In re-roofing the Motel, the flue vents had been lifted up to place the new shingles under the flashing around the vents and then been replaced.

The Plaintiff called Charlie Hurst, a PSC serviceman since 1953, as a witness. Hurst also was PSC's supervisor of servicemen at its Statesville office and responsible for the training of PSC service personnel. Hurst testified that when a customer requested

PSC to light pilot lights at the Motel, or any other facility, he would follow a routine mental procedure or checklist. Hurst also testified that PSC trained its servicemen to follow the same procedure. First, Hurst would check for the smell of gas. Next, Hurst visually would inspect the heater or other appliance, particularly for cleanliness in the burner assembly area of the heater. Then, Hurst would light the pilot light and insure that a blue flame existed. Hurst testified that a yellow flame indicated the presence of CO. Next, Hurst would insure that the heater was drafting, or venting, properly. Also, if he noticed any obvious defect, Hurst would make a notation on the work order. On the heater introduced at trial, Hurst demonstrated for the Court and the jury his routine procedure.

The Plaintiff also called Clifford Reavis, who had served for twelve years as the Director of Inspections for the City of Statesville, as a witness. Reavis testified that there was not any mechanical code applicable in 1959 or 1960. Reavis further testified that since the early 1970's, PSC had agreed that if PSC *were on a customer's premises* and saw an *obvious* defect in an appliance, the PSC serviceman would make any necessary corrections, but that if the owner refused to allow any corrections because of cost or some other reason, PSC would report the defect to the City of Statesville. Mr. Reavis testified, further, that he had heard Mr. Hurst's testimony and that the procedure used by the PSC servicemen, about which Hurst testified, was in accordance with the agreement between PSC and the City of Statesville.

The Plaintiff called Professor Douglas Bradbury as a witness, whom the Court accepted as an expert in the field of mechanical engineering. Professor Bradbury opined that the escape of the CO into Room # 5 at the Motel was caused by misalignment of the flue and insufficient air vents in the room. Professor Bradbury had not noticed the misalignment until the heater

was removed from the wall for inspection in preparation for trial.

Another of the Plaintiff's witnesses, Carol Denise Wooten, testified that she had stayed in Room # 5 at the Motel a week before March 12, 1985, and had noticed an unusual feeling of tightness in her chest,[1] which she thought was the onset of a chest cold. There was no evidence, however, that she had reported this feeling of tightness in her chest to Shah, PSC, or anyone else.

The Plaintiff called Mrs. Bob Shah, the Motel owner's wife. Mrs. Shah testified that she worked in the office at the Motel, that she was not involved with the maintenance work at the Motel, and that her husband handled the maintenance aspects of the Motel's operation. During Mrs. Shah's testimony, Shah was in the courtroom. The Plaintiff, however, failed to call Shah despite his presence at trial.

None of the other evidence by Plaintiff had any significance in the Court's decision because the first question for the Court is whether PSC had any duty.

## III. DISCUSSION AND CONCLUSIONS

The Plaintiff bases his claim on two theories: Negligence and *res ipsa loquitur.*

■ The Plaintiff's contention regarding *res ipsa loquitur* is ludicrous. *Res ipsa loquitur* is an evidentiary rule that allows a party to prove negligence by establishing merely the circumstances of an occurrence that produces injury. *Snow v. Duke Power Co.,* 297 N.C. 591, 256 S.E.2d 227, 231 (1979). North Carolina courts have defined the doctrine of *res ipsa loquitur* as follows:

> When an instrumentality which caused an injury to plaintiff is shown to be under the control and operation of the defendant, and the accident is one which, in the ordinary course of events, does not happen if those who have the management of it use proper care, the occurrence itself is some evidence that it arose from want of care.

---

1. Plaintiff's medical evidence established that a feeling of dizziness, double vision, and tightness

in the chest were symptoms of carbon monoxide poisoning.

*Young v. Anchor Co.,* 239 N.C. 288, 79 S.E.2d 785, 789 (1954). Thus, *res ipsa loquitur* applies when the plaintiff offers proof that the instrumentality causing injury was in the defendant's exclusive control and that the accident was one which ordinarily does not happen in absence of negligence. In this case, there is not a scintilla of evidence that PSC had any control over the wall heater in Room # 5 of the Motel.

 Regarding the Plaintiff's contention that PSC was negligent, negligence refers to a party's conduct and the failure to exercise ordinary care. The law imposes a duty upon every person to use ordinary care to protect himself and others from injury. A breach of that duty is called negligence. To hold PSC liable, the Plaintiff would have to produce evidence that:

(1) The PSC had a duty to inspect the gas wall heater.

(2) PSC breached its duty.

(3) PSC's breach of duty was a proximate cause of the Plaintiff's injuries.

██ The evidence was that the heater was installed in approximately 1959 or 1960, that PSC did not install the heater, that the flue vent connection was behind the wall, that since 1981 PSC had not even been called to light the pilot light, and, therefore, that since 1981 PSC did not have any opportunity to observe even obvious defects.

There is simply no evidence that PSC had any duty in this case which was subject to being breached. Under North Carolina law, PSC had no duty to inspect the gas wall heater. Moreover, in this case, there is no *evidence* that PSC was under a duty to inspect. Thus, the Plaintiff's case falls on the first element of its prima facie case.

The Court believes that two North Carolina decisions are controlling. In *Caldwell v. Morrison,* the North Carolina Supreme Court considered the plaintiff's claim of negligence regarding a gas-fired heater. *Caldwell v. Morrison,* 240 N.C. 324, 82 S.E.2d 86 (1954). The *Caldwell* court stated that the failure on the part of the gas company to inspect the equipment would not constitute negligence on its part unless it was charged with the duty to

inspect such equipment and to keep it in repair. *Id.,* 82 S.E.2d at 88–89. The court in *Caldwell* then stated the general rule of law that this Court believes is controlling: "Ordinarily where gas lines and appliances are installed on private property, *in the absence of notice* of a leaky or defective condition therein, the supplier of gas is under no duty to inspect such lines and appliances and to keep them in repair in the absence of a contract to do so." *Id.* at 89 (emphasis added) (citations omitted). Moreover, when "a gas company does not install the gas fixtures in a customer's building and does not own them, the gas company is in no way responsible for their condition or their maintenance...." *Graham v. North Carolina Butane Gas Co.,* 231 N.C. 680, 58 S.E.2d 757, 761 (1950) (citations omitted).

In the case before the Court, the gas heater was installed at the Motel by some entity other than PSC some 25 years before this incident. PSC had neither been called upon to light the pilot light in any of the heaters in any of the rooms at the Motel nor called upon to service the heaters at the Motel since October 1981. The Plaintiff failed to produce any evidence that PSC had any notice of any defect with the heater in Room # 5 at the Motel.

Rule 50(a) of the Federal Rules of Civil Procedure provides for a motion for a directed verdict at the close of evidence offered by an opponent and requires that the motion state the specific ground to support the motion. PSC has complied with this Rule.

In considering a motion for directed verdict, the Court must view the plaintiff's evidence, including all reasonable inferences from the evidence, in the light most favorable to the plaintiff. *Ralston Purina Co. v. Edmunds,* 241 F.2d 164, 167 (4th Cir.), *cert. denied,* 353 U.S. 974, 77 S.Ct. 1059, 1 L.Ed.2d 1136 (1957). The issue for the Court is whether any evidence exists upon which a jury could properly find a verdict for party opposing the motion. *Id.*

This Court very rarely grants a directed verdict at the close of a plaintiff's evidence. The Plaintiff, however, simply has failed to

offer evidence to support his allegations that PSC was negligent. The Court, therefore, must grant PSC's motion for a directed verdict.

NOW, THEREFORE, IT IS ORDERED that PSC's motion for a directed verdict at the close of the Plaintiff's evidence be, and hereby is, GRANTED.

A Judgment dismissing this action with prejudice will be filed simultaneously with this Order.