924 F.2d 1052
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James B. LINDSAY, III, by Erwina M. LINDSAY, Guardian Ad
Litem for James B. Lindsay, III, Plaintiff-Appellant,
v.
PUBLIC SERVICE COMPANY OF NORTH CAROLINA, INC., The Coleman
Company, Incorporated, Defendants-Appellees.
 No. 90-2358.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 7, 1991.
Decided Feb. 13, 1991.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert D. Potter, Chief District Judge. (CA-88-113-C-C-P)
 Bob Warren, Black Mountain, N.C., for appellant. Mel Joseph Garofalo, Hedrick, Eatman, Gardner & Kincheloe, Charlotte, N.C. (Argued), for appellees; John Brem Smith, Hedrick, Eatman, Gardner & Kincheloe, Charlotte, N.C., on brief.
 W.D.N.C., 732 F.Supp. 623.
 AFFIRMED.
 Before WILKINSON and WILKINS, Circuit Judges, and THOMAS SELBY ELLIS, III, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 James Lindsay suffered permanent paralysis and brain damage from inhaling carbon monoxide fumes produced by a motel room gas heater. His sister, as guardian ad litem, filed this diversity action against Public Service Company of North Carolina ("Public Service") alleging negligence and seeking damages for Lindsay's injuries.[1] At trial, the district court granted Public Service's motion for a directed verdict at the close of plaintiff's case and plaintiff appealed. Finding no error, we affirm.[2]
 
 
 2
 * Some time in mid-March 1985, Lindsay and his mother registered as guests at the U.S. 21 Motel (the "motel") in Statesville, North Carolina, and were assigned to Room 5. When they were discovered on March 12, Lindsay was in a coma and his mother was dead. Both had been overcome by carbon monoxide produced by the room's gas-fired wall heater. The district court found that the heater was installed in 1959 or 1960 at the direction of a former owner of the motel, and apparently functioned without significant problems for roughly twenty-five years. In 1981, new owners purchased the motel. After 1981, the new owners elected to light the pilot lights on the gas heaters in each room and to perform any necessary maintenance work.
 
 
 3
 Public Service is a public utility that supplies natural gas to the motel. Public Service did not manufacture or install the heating unit in Room 5, but before 1981 it made service calls to the motel upon request of its customer and both set and changed the motel's gas meter. In 1982 Public Service conducted an energy audit at the motel and made recommendations to the owners. The last time an employee of Public Service was in Room 5 prior to the accident was October 8, 1981, when a serviceman lit the pilot light in each room at the request of the new owners. The serviceman noticed no problem with the heater in Room 5, and his work order gave no indication of any problem. Since the early 1970's Public Service has maintained an informal agreement with the Inspections Department of the City of Statesville, according to which Public Service personnel who are on a customer's premises and observe an "obvious defect" in an appliance will either correct the problem or, if they are unable or not permitted to do so, notify the city.
 
 
 4
 At trial, appellant's expert testified that in his opinion the carbon monoxide in Room 5 was caused by "an insufficient supply of oxygen for the heater and a misalignment between the flu[e] and the opening out of the top of the heater." Appellant argued that these conditions were the result of improper installation in 1959 or 1960 and Public Service had a continuing duty to discover and remedy this condition. Evidence at trial also indicated that at the time of the accident roofers were performing repair work in the vicinity of the vent pipes leading from the room heaters. Public Service suggests that this work may have caused or contributed to the accumulation of carbon monoxide fumes in the room, either because the roofers may have blocked the exhaust pipes or misaligned those pipes.
 
 
 5
 At the close of appellant's case, the district court granted a directed verdict for Public Service on the ground that appellant's evidence failed to establish a duty on the part of Public Service to inspect the heater in Room 5.
 
 II
 
 6
 In North Carolina, as elsewhere, a cause of action in negligence requires that the plaintiff demonstrate (i) a duty by defendant to conform his conduct to a particular standard of care, (ii) breach of that duty, (iii) proximate causation, and (iv) injury. See Crinkley v. Holiday Inns, Inc., 844 F.2d 156, 160 (4th Cir.1988) (citing Plyler v. Moss & Moore, Inc., 40 N.C.App. 720, 254 S.E.2d 534, 537 (1979)). We agree with the district court that viewing the evidence in the light most favorable to plaintiff, including all reasonable inferences therefrom, a directed verdict was warranted.[3] See Crinkley v. Holiday Inns, Inc., 844 F.2d at 160; Gairola v. Virginia Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir.1985).
 
 
 7
 The district court correctly found two North Carolina decisions persuasive. First, in Caldwell v. Morrison, 240 N.C. 324, 82 S.E.2d 86 (1954), the Supreme Court of North Carolina found, on facts remarkably similar to the instant case, that a wrongful death plaintiff failed to state a claim for negligence against a gas company. In Caldwell, a guest of the Mor-Mac Motor Court was asphyxiated by carbon monoxide produced by a room heater that burned liquified petroleum gas. The defendant gas company had installed the heater, pipes, and storage tank, and the complaint alleged a subsequent failure to test and inspect to discover a defective or dangerous condition. The court held that "[o]rdinarily, where gas lines and appliances are installed on private property, in the absence of notice of a leaky or defective condition therein, the supplier of gas is under no duty to inspect such lines and appliances and to keep them in repair, in the absence of a contract to do so." 82 S.E.2d at 89 (citations omitted). Because the complaint contained no allegation that the gas company had been notified of a defect, the allegations could not establish negligence. Like Caldwell, the second case relied on by the district court, Graham v. North Carolina Butane Gas Co., 231 N.C. 680, 58 S.E.2d 757 (1950), also makes clear that a gas company in circumstances like those at bar has no duty to inspect for and remedy defects absent actual notice.[4]
 
 
 8
 The district court, applying the settled North Carolina rule reflected in Caldwell and Graham,[5] correctly concluded that Public Service had no duty to inspect for and remedy any defect in the Room 5 heater. The district court also correctly concluded that plaintiff failed to produce any evidence that Public Service had any notice of a defect in the Room 5 heater. Neither Public Service nor anyone else apparently was aware of any malfunction.[6] Nor did Public Service assume any contractual obligation to inspect the heater. At most it agreed with the City of Statesville that if its servicemen should notice obvious defects in equipment they would attempt to remedy the matter or report it to the City. It was not disputed that since 1981 Public Service had not been called on to light the pilot in Room 5, and therefore had no occasion to observe even obvious defects.
 
 
 9
 Appellant argues unpersuasively that a jury could infer notice on the part of Public Service from a number of disparate facts, including expert testimony that the heater was improperly installed, Public Service's admitted policy of inspecting appliances following initial installation and before turning on the gas supply, Public Service's installation of a gas valve in Room 5 in 1979, and the heater manufacturer's training of Public Service's personnel to recognize improper installation conditions of the kind here in issue. This evidence is simply not of sufficient weight to enable a reasonable jury to find the duty element of negligence. Graham and Caldwell employ the language of actual notice. No evidence was presented to suggest actual notice. Moreover, even assuming the heater had been improperly installed, it functioned for roughly twenty-five years without incident. Viewing the evidence in the light most favorable to appellant, the district court properly concluded that no reasonable jury could have found that Public Service knew the heater was defective. Garraghty v. Jordan, 830 F.2d 1295, 1302 (4th Cir.1987); Kim v. Coppin State College, 662 F.2d 1055, 1059 (4th Cir.1981) (district court is entitled to grant directed verdict even though some evidence supports the non-moving party, and it need not strain to find inferences supporting non-movant's position).
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 Appellant also sued the owner of the motel at the time the heater was installed and the manufacturer of the heater. These claims were dismissed prior to trial. Appellant reached an out of court settlement with the owners of the motel at the time of the accident
 
 
 [2]
 In addition to the grant of the directed verdict, appellant also seeks reversal of the district court's decisions to (i) grant in part Public Service's motion in limine, and (ii) exclude the testimony of plaintiff's witness Dr. Richard Henderson on the ground that he was not qualified as an expert. In its order granting the directed verdict, the district court made clear that neither of these matters affected his ruling on the directed verdict motion. He noted that "[N]one of the other evidence by Plaintiff had any significance in the Court's decision," which was based exclusively on appellant's failure to establish a duty on the part of Public Service. Because we affirm the district court's grant of directed verdict on the ground that no duty was established, we do not reach either these evidentiary issues or the defense of proximate cause raised by Public Service
 
 
 [3]
 We also agree with the district court's conclusion that res ipsa loquitur is inapplicable to this case. North Carolina law bars the application of the doctrine unless it is shown that the instrumentality which caused the injury was under the control and operation of the defendant. Young v. Anchor Co., 239 N.C. 288, 79 S.E.2d 785, 788 (1954). Here, there is no persuasive evidence that Public Service either owned or maintained any control over the heater
 
 
 [4]
 The result reached in Graham is the opposite of that reached in Caldwell because in Graham the gas company had actual notice of a defect. Specifically, the gas company's truck driver learned of gas leaking from an oven, yet failed to turn off the gas, and then triggered an explosion by entering the kitchen with a lighted flame. On these facts, the Graham court reversed compulsory non-suits in favor of the gas company, understandably finding that actual notice of a defect imposed a duty on the company. In reaching this result, the court made the following remarks pertinent here:
 Where a gas company does not install the gas fixtures in a customer's building and does not own them and has no control over them, it is in no way responsible for their condition or for their maintenance. Consequently, it has the right to act upon the assumption in the absence of notice to the contrary that such fixtures are sufficiently secure to permit gas to be introduced into the building with safety, and is not liable for an injury caused by a leak therein, of which it has no knowledge.
 
 
 [58]
 S.E.2d at 761-62 (citations omitted)
 
 
 [5]
 Appellant's reliance on generalized definitions of negligence in the Restatement of Torts and North Carolina case law is misplaced. These authorities recognize that the standard of reasonable care varies according to context. In Caldwell and Graham, the Supreme Court of North Carolina set forth the precise standard of care applicable to a gas company in circumstances like those at bar
 
 
 [6]
 Appellant's witness Carol Denise Wooten testified that she stayed at the motel during the week preceding March 12, apparently in Room 5, and experienced an unusual feeling of tightness in her chest which medical evidence identified as symptomatic of carbon monoxide poisoning. There was no evidence, however, that she reported her complaint to anyone