Jack R. GAMBLE, Jr., Plaintiff-Appellant,

v.

C.L. WEBB, et al., Defendants-Appellees.

No. 86–4465

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Dec. 31, 1986.

Rebecca L. Hudsmith, Wellborn Jack, Jr., Shreveport, La., for plaintiff-appellant.

William M. Cady, Asst. Atty. Gen., William J. Guste, Jr., Atty. Gen., Shreveport, La., for defendants-appellees.

Charles W. Salley, Shreveport, La., for Aldo F. Fassio and Noble Hay, Jr.

Before CLARK, Chief Judge, GOLDBERG and GEE, Circuit Judges.

**PER CURIAM:**

The plaintiff appeals from the district court's grant of summary judgment in favor of the defendants. We affirm.

Jack R. Gamble, Jr., filed suit under 42 U.S.C. § 1983 alleging that the Louisiana Downs racing stewards violated his procedural due process rights when they suspended his race horse owner's license on May 10, 1983. The defendants are the ten members of the Louisiana State Racing Commission ("Commission") and the three racing stewards appointed by the Commission. The district court decided this case on cross-motions for summary judgment.[1] The sole issue presented in this appeal is what process is due when racing stewards temporarily suspend the privileges granted to a licensee by Louisiana law.

The plaintiff owns and races thoroughbred horses in Louisiana. Louisiana issued him an owner's license for the 1981–82 racing season, and the 1982–83 season. On his 1981–82 license application, he answered question No. 22, a question about prior arrests,[2] "No." On the following year's application Gamble answered the same question "Yes." When his trainer turned in the 1982–83 application, however, the Commission's office manager and the trainer marked the "Yes" answer as error and checked the "No" blank because a "Yes" answer required an explanation and none was provided. On March 28, 1983, the racing stewards received a list from the Louisiana State Police of those people whose owner's applications contained discrepancies with police records. The list of

---

1. Although both parties agreed to dispose of this case in this way, they neglected to submit stipulated facts. The district court, however, found that "[f]rom the record, evidence and findings of fact submitted by both parties, it appears that there is no dispute as to any *material* fact." Mem.Op. at 2 (emphasis in original). The court then made findings of fact and required the parties to file with the court any disagreements they had with those findings. Neither party disagreed then, nor do they complain now, of the court's findings of fact.

2. Question No. 22 on the Application for License reads:

Have you been convicted of violating any municipal or parish ordinances, or have you ever been ARRESTED, indicted, pleaded guilty, pleaded nolo contendere, been found guilty, or been convicted, or forfeited [sic] bail or been fined for any criminal offense, either felony or misdemeanor (except traffic violations other than driving under the influence of intoxicating liquor)? Yes ____ No ____ If yes, give complete details: Nature of charge, when, where, etc., attach additional sheet if necessary.

53 people included the plaintiff.[3] The Commission's chief investigator then attempted to contact those people and inform them of the discrepancy. The plaintiff was contacted, but it appears the exact nature of the problem was not discussed. On April 29 or 30, the plaintiff went to the Commission office and was specifically informed that he had a problem with Question No. 22 on his application. On May 3, the plaintiff, an attorney, sent a letter to the stewards and the Committee objecting to Question No. 22 and including a modified version of the question to which he answered "No."[4]

On May 5, the stewards suspended plaintiff's license, effective May 10, "pending appearance before the Stewards for investigation of falsification of license application."[5] Mem.Op. at 6. The stewards based the suspension on the fact that the plaintiff had falsified question No. 22 and would not change his "No" answer. The stewards did not notify the plaintiff before they issued the order. The plaintiff found out about the stewards' ruling on May 15 and wrote a letter to the stewards that requested an immediate hearing on the suspension. The stewards scheduled a hearing on May 18, but because their office was at the race track and the plaintiff's suspension prohibited him to enter any race track, Gamble declined to attend. The stewards made it clear to Gamble's lawyer that they would give Gamble "express" authorization to come on to the racing grounds and delay the hearing until Gamble could get there.[6] After this fiasco, the stewards reset the hearing for May 21 and sent the plaintiff a letter that expressly authorized him to enter the racing grounds. The plaintiff had already appealed to the Commission and it had placed his appeal on the agenda for its May 27 meeting. Gamble decided to skip the stewards' May 21 meeting because of his scheduled meeting with the Commission. At the May 27 meeting, however, the Commission did not decide on the merits because the plaintiff had failed to appear before the stewards. The stewards next scheduled a meeting for June 8. Gamble informed the stewards that he could not attend then because he was scheduled to introduce the speaker at a local Rotary Club meeting.

At that point, Gamble turned to the state courts and received satisfaction in the form of injunctions against the Commission and the stewards. No other hearings were scheduled by the stewards or Gamble. Gamble received a new license when he completed an application answering "Yes" to the inquiry about past arrests.

The plaintiff's suit successfully states a cause of action under § 1983: deprivation

---

**3.** Gamble was arrested in 1972 for driving while intoxicated and failure to maintain control.

**4.** The modified question No. 22 reads: "Have you been convicted of violating any municipal or parish ordinances adopted pursuant to the provisions of Chapter 4 of Title 4? Yes ( ) No (X)."

**5.** Under Louisiana statute, only the Commission may revoke a license, but the stewards may recommend revocation and may suspend a license for the duration of a racing meet plus ten days.

**6.** The district court's findings of facts to this incident are as follows:

Plaintiff had requested that he receive written authorization to enter Louisiana Downs for that hearing. Gamble did receive a letter setting the time for the hearing; however, the letter contained no language which explicitly stated that "Jack R. Gamble, Jr. is authorized to enter Louisiana Downs." Plaintiff's attorney received this letter on the morning of the hearing and telephoned the LSRC office to request that written notice be left at Gate No. 1 at the race track. The stewards felt that the letter, itself, was authorization to enter the grounds, but they attempted to comply with the plaintiff's request. An authorization was drafted, and an attempt was made to leave it at the gate; however, no guard was present because it was morning and not time yet for the day's racing to begin. When Gamble and his attorney arrived at the gate and found no authorization, Gamble left the premises on the grounds that he did not wish to violate the provisions of Ruling 157. His attorney went on to the hearing, and plaintiff awaited his attorney at a nearby hotel. The stewards offered to wait until Gamble could return; however, plaintiff's counsel stated that his position was that plaintiff was not there because no authorization letter was received. He stated, "I prefer to leave it at that junction."
Mem. Op. at 7–8.

of a constitutional right caused by persons acting under color of state law. *Fontana v. Barham,* 707 F.2d 221, 225 (5th Cir. 1983). The defendants concede that Gamble's license constitutes a property interest protected by the Fourteenth Amendment. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972). They also concede that the plaintiff has met the "color of state law" requirement. *Sims v. Jefferson Downs Racing Association, Inc.,* 778 F.2d 1068, 1076 (5th Cir.1985). The plaintiff therefore complains that the stewards did not accord him the procedural due process required by the Fourteenth Amendment when they suspended his owner's license.

█ Procedural due process consists of notice and the opportunity to be heard. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494, 503–04 (1985). Although some form of hearing is required before the owner is finally deprived of a protected property interest, the "timing and nature of the required hearing 'will depend on appropriate accommodation of the competing interests involved.'" *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 434, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265, 277 (1982) (*quoting Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975)) (footnote omitted). These competing interests "include the importance of the private interest and the length or finality of the deprivation; the likelihood of governmental error; and the magnitude of the governmental interests involved." *Logan,* 455 U.S. at 434, 102 S.Ct. at 1157, 71 L.Ed.2d at 277 (citations omitted).

█ Gamble does not contend that the *post*-deprivation procedures were inadequate. Instead, he urges that due process in this instance requires some sort of hearing before any temporary suspension of an owner's license. The Supreme Court has noted that "[t]here are, of course, some situations in which a post-deprivation hearing will satisfy due process requirements." *Loudermill,* 470 U.S. at 542 n. 7, 105 S.Ct. at 1493 n. 7, 84 L.Ed.2d at 504 n. 7 (cita-

tions omitted). We hold that the present one is such a situation. To reach this decision, we have balanced the competing interests outlined in *Logan,* aided by the Supreme Court's holding in *Barry v. Barchi,* 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979). There, the Court addressed the summary suspension of a New York horse trainer's license and ruled:

> We do not agree with Barchi's basic contention, however, that an evidentiary hearing was required prior to the effectuation of his suspension. Unquestionably, the magnitude of a trainer's interest in avoiding suspension is substantial; but the State also has an important interest in assuring the integrity of the racing carried on under its auspices. In these circumstances, it seems to us that the State is entitled to impose an interim suspension, pending a prompt judicial or administrative hearing that would definitely determine the issues.... In such circumstances, the State's interest in preserving the integrity of the sport and in protecting the public from harm becomes most acute. At the same time, there is substantial assurance that the trainer's interest is not being baselessly compromised.

*Id.* at 64–65, 99 S.Ct. at 2649, 61 L.Ed.2d at 375 (citations omitted).

In the present case, Gamble's interest in his horse owner's license is substantial. Yet, the suspension was temporary, effective only pending a hearing that was available in this case eight days after the date of the suspension, and within three days of Gamble's request. The likelihood of governmental error in this case is also small. The information determining that Gamble's application contained a discrepancy came from the Louisiana State Police records; in other words, a reliable source with reliable records. Finally, the State's interest in maintaining the integrity of horse racing in Louisiana is great. We hold that the reasoning in the above quoted passage from *Barry* applies here. The State must have effective means of dealing with those who have lied on their applications. In addition,

parallel to the facts of *Barry*, the suspension in this case did not come out of thin air. The Commission notified Gamble of the discrepancy in his application. The stewards gave him an "opportunity to present his side of the story" before the suspension. *See Barry*, 443 U.S. at 65, 99 S.Ct. at 2649, 61 L.Ed.2d at 376.

We agree with the district court's conclusion that

> when the owner's interest is balanced against the need to maintain the integrity of horse racing, the swiftness of the administrative determination, the indicia of reliability, and the informal notice which plaintiff received, ... a pre-hearing suspension pending appearance before the stewards does not violate the Fourteenth Amendment.

Mem.Op. at 16.

The plaintiff does not challenge the adequacy of the post-deprivation hearing available to him nor can we find any fault with the stewards' swift actions during the plaintiff's suspension. We therefore AFFIRM the district court's order granting the defendant's motion for summary judgment.