**George E. CHEATHON**

v.

**Marshall B. BRINKLEY.**

**Civ. A. No. 91–770–A.**

United States District Court,
M.D. Louisiana.

June 4, 1993.

Fernin F. Eaton, Baton Rouge, for plaintiff.

Sonia Mallett, Andre Charles Castaing, Asst. Attys. Gen., Louisiana Dept. of Justice, Baton Rouge, for defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

JOHN V. PARKER, Chief Judge.

This matter is before the court on a motion by defendant, Marshall B. Brinkley, for summary judgment. The motion is unopposed. There is no need for oral argument. Jurisdiction is allegedly based upon 28 U.S.C. § 1343(3) and 42 U.S.C. §§ 1983 and 1988.

This action arises out of plaintiff's suspension without pay and ultimate termination as a civil service employee of the Louisiana Public Service Commission following an investigation into his alleged solicitation and acceptance of bribes. It is alleged that plaintiff, who was responsible for enforcement of regulations regarding interstate trucking operations, accepted the bribes in lieu of issuing violation tickets to two truck drivers passing through his post at the eastbound Delta scales on Interstate 20 in Madison Parish, Louisiana.

The undisputed facts in this matter establish that upon learning that plaintiff had been arrested for the alleged conduct, defendant informed him by telephone that he was being suspended from his position without pay effective the same day.[1] Plaintiff acknowledged his understanding of the situation and told defendant "I didn't do it." In accordance with Louisiana Civil Service Rule 12.-2,[2] defendant followed up his conversation with plaintiff with a letter dated August 16, 1990 containing the specific reasons for the suspension. Receipt of the letter is acknowledged by plaintiff. In addition to fully informing plaintiff of the factual basis for his suspension, the letter notified him that an

---

1. Louisiana Civil Service Rule 12.2. provides, in pertinent part: "(a) Any permanent employee who is suspended without pay shall be so notified by his appointing authority or his authorized agent on or before the effective time and date of the commencement of the suspension ... (b) No suspension shall exceed ninety (90) calendar days without the approval of the Commission."

2. Louisiana Civil Service Rule 12.2 also provides: "Each permanent employee so suspended shall be furnished detailed reasons therefor in writing prior to or within fifteen (15) calendar days following the effective date of the suspension."

internal investigation would be conducted into the charges against him and that his participation in the investigation was invited. He was further advised that "should the results of the investigation warrant further disciplinary action such as an extended suspension or even separation from service you will be so notified in writing and be given an opportunity to respond prior to this action being taken."

After the internal investigation was completed, defendant informed plaintiff by letter dated November 7, 1990 that the evidence indicated that he had indeed accepted bribes in lieu of issuing violation tickets. He was advised that his termination had been recommended but that he was to be given an opportunity to respond to the charges prior to his termination.

The pre-termination hearing was held on November 13, 1990.[3] As a result of the hearing, plaintiff was terminated. He elected to appeal the termination through the proper civil service channels.[4] See Louisiana Civil Service Rules, Chapter 13.

Plaintiff filed this action on August 15, 1991 alleging violations of the United States Constitution, in particular the First, Fifth, and Fourteenth Amendments, as well as the Constitution of the State of Louisiana. Plaintiff essentially contends that his suspension[5] was not preceded by adequate procedural due process and that defendant terminated him, in substantial part, because he exercised his right not to speak.

Defendant, the Executive Secretary of the Public Service Commission and chief administrative officer of the Louisiana Department of Public Service, moves for summary judgment asserting that no constitutional viola-tions occurred in the process of plaintiff's suspension and subsequent termination. Defendant argues that the telephone call he made to plaintiff informing him of his immediate suspension and the reasons for the suspension, coupled with the letter defendant wrote to plaintiff the following day outlining the reasons, satisfied the procedural due process requirements set forth by the United States Supreme Court case in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

Defendant further asserts that in the event a procedural due process violation did occur, he is entitled to qualified immunity because it was not clearly established at the time of plaintiff's suspension that a tenured civil servant was entitled to a Loudermill hearing prior to suspension. Defendant also denies that plaintiff was terminated because he exercised his right not to speak.

### Procedural Due Process Claim

 Procedural due process requires notice and an opportunity to be heard before a person is deprived of a constitutionally protected property interest. It is undisputed that plaintiff held a tenured position as a civil service employee; tenured employment has long been recognized as a property interest entitled to constitutional protection. *Loudermill,* supra, 470 U.S. at 537, 105 S.Ct. at 1491. Thus, it is clearly established that prior to termination, a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. 470 U.S. at 546, 105 S.Ct. at 1495.

---

3. Although it is not clear whether plaintiff attended or was represented at the pre-termination hearing, defendant's "Statement of Undisputed Facts" indicates that the hearing was in fact held. In the absence of opposition from plaintiff, defendant's "Statement of Undisputed Facts" is accepted as true. Even if plaintiff did not participate in the hearing, he cannot now complain. "Due process requires only an opportunity to be heard; if an individual chooses not to take advantage of that opportunity, due process has nevertheless been satisfied." *D'Acquisto v. Washington,* 640 F.Supp. 594 (N.D.Ill.1986).

4. Documents in the record indicate that the Louisiana Civil Service Commission may have or-dered that plaintiff be reinstated and that the matter is apparently still pending before the Louisiana First Circuit Court of Appeal. Since our concern here is procedural due process, the ultimate outcome of the civil service proceedings does not concern us. In like manner, the record does not disclose the status of the criminal charges filed against plaintiff. Again, we are not concerned with the outcome of those proceedings.

5. Plaintiff has made no complaint about the *post*-suspension and pre-termination process afforded him.

*Loudermill* involved tenured public employees who were discharged immediately with no pre-termination hearing of any sort. It is very clear that the Court there held that the Due Process Clause of the Fourteenth Amendment mandates notice and an opportunity to respond before termination of employment. As the Court noted:

> The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. (citation omitted). The tenured employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. (citation omitted). To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Loudermill*, supra, 470 U.S. at 546, 105 S.Ct. at 1495.

However, as defendant points out, it was not clearly established at the time of plaintiff's suspension that a formal hearing was required prior to the temporary suspension without pay of a tenured employee. Courts that have addressed the requirement of a *Loudermill* hearing prior to suspension without pay have done so without consistency. This lack of a general rule is attributable to the varied factual contexts within which the cases have been decided.

In *Bailey v. Board of County Com'rs of Alachua County*, 956 F.2d 1112 (11th Cir. 1992), cert. denied —— U.S. ——, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992), a prison guard was suspended without pay following his arrest on charges of bribery, unlawful compensation, and unlawful possession of certain amounts of money in a jail. The initial written notice of suspension was given to the guard on the morning of his arrest. A second notice was sent to him twelve days later informing him that his suspension without pay was to continue "until further notice." Although the criminal charges were eventually found baseless and the guard was ordered to return to work, he remained suspended for over one year.

In addressing the guard's claim that his suspension without pay amounted to a viola-

tion of procedural due process, the *Bailey* court found that the defendants were entitled to qualified immunity. In reaching this conclusion, the court relied on *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled in part on other grounds, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), for the proposition that "the requirement of a hearing does not always require the state to provide a hearing prior to the initial deprivation." (emphasis in original). Rather, "the necessity of quick action by the State . . ., when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." *Bailey*, supra, 956 F.2d at 1123 citing *Parratt*, 451 U.S. at 539, 101 S.Ct. at 1915.

Based on its interpretation of procedural due process law, the *Bailey* court found that the plaintiff "did not carry his burden of establishing that he had a clearly established constitutional right to a predeprivation hearing." Id. The court noted that the defendants could have reasonably believed that the situation required the "necessity for quick action" rendering a predeprivation hearing impracticable; that is, because "[a] corrections facility's paramount concern is security, [and] a guard suspected of corruption compromises that security," the court found summary suspension was not unreasonable. Id. at 1124. Further, because the defendants knew that plaintiff had access to an administrative appeal procedure to contest the suspension, "[i]t would have been reasonable for [them] to believe that these procedures were capable of providing [plaintiff] an adequate postdeprivation remedy." Id. Thus, the *Bailey* court affirmed the district court's ruling that the defendants were entitled to qualified immunity.

It should also be noted that, in a footnote, the *Bailey* court rejected the plaintiff's argument that the *Loudermill* case clearly established that suspensions from employment must be with pay to remain within the confines of procedural due process. In making this argument, the plaintiff in *Bailey* relied on the following sentence from *Loudermill:*

"[I]n those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay." *Loudermill*, 470 U.S. at 544–45, 105 S.Ct. at 1494–95. However, the *Bailey* court refused to accept that this dicta was sufficient indication that suspension with pay was required by clearly established law. Id. at 1124., n. 13.

In accord with the *Bailey* decision is a Fifth Circuit case dealing with the temporary suspension of a horse racing license. In *Gamble v. Webb*, 806 F.2d 1258 (5th Cir. 1986), plaintiff's horse racing license was suspended after a discrepancy was found in his application. (Plaintiff had given inconsistent answers regarding prior arrests.) After receiving information from the Louisiana State Police that his application conflicted with police records, plaintiff was informed of the problem. Plaintiff thereafter wrote to the Racing Commission objecting to the question regarding his past arrests; however, his license was subsequently suspended pending an investigation.

Plaintiff argued that due process required that some sort of hearing be held before any temporary suspension of a race horse owner's license. The defendants conceded that the license constituted a property interest protected by the Fourteenth Amendment. The court rejected plaintiff's argument and cited *Loudermill* for the proposition that in some situations, post-deprivation hearings will satisfy due process requirements.

In *Gamble*, the court noted that plaintiff's interest in his horse owner's license was "substantial." On the other hand, the court found that the suspension was only temporary and that the risk of governmental error in suspending plaintiff's license was small since the information regarding the discrepancy in plaintiff's license had been provided by the State Police and was reliable. The court also found that the state's interest in maintaining the integrity of horse racing was great.

In *D'Acquisto v. Washington*, 640 F.Supp. 594 (N.D.Ill.1986), several police officers were suspended after having been indicted on charges of accepting bribes in return for altering the course of investigations of hit and run accidents and for accepting bribes in lieu of issuing traffic citations. Immediately upon their indictment, the superintendent of police suspended the officers from active duty without pay and filed departmental charges seeking their removal from the force.

The officers filed § 1983 actions, alleging, among other things, that the departmental regulations allowing for suspension for an indefinite time pending disposition of charges without an opportunity for a hearing deprived them of due process.

In determining what process was due the officers, the court noted the strong governmental interest in "ridding itself of ineffective or untrustworthy public employees" and the strong private interest in maintaining a means of livelihood. In deciding that the governmental interest in effective law enforcement included a need for immediacy, the court found that a pre-suspension hearing was not necessarily required. The court stated, "We do not read Loudermill as establishing a blanket rule that every public employee has a right to a pre-deprivation hearing in all circumstances ... The absence of a pre-suspension hearing is not necessarily fatal to the Police Board procedures." *D'Acquisto*, supra, 640 F.Supp. at 613. However, the court went on to note that in the absence of a pre-suspension hearing, a "prompt post-deprivation hearing is a constitutional necessity."

In contrast to the above cited cases, are cases which have held that a temporary suspension of employment without pay constitutes a property interest of significant importance and which warrants some type of pre-suspension due process. In *Garraghty v. Jordan*, 830 F.2d 1295 (4th Cir.1987), the court found that a five day suspension without pay of a prison warden based on charges of insubordination had to be preceded by some type of pre-suspension hearing. Although the court noted that the suspension was "much less severe than the deprivation caused by a discharge," it concluded that the warden was entitled to some form of due process. In reaching this conclusion, the court reasoned that the warden's suspension "was not a *de minimis* deprivation, for with that suspension he lost compensation and

other emoluments of the office for the period of the suspension." Id. at 1299. (emphasis in original).

Other courts read *Loudermill* as clearly entitling an employee to an opportunity to be heard before being suspended without pay. In *Everett v. Napper*, 833 F.2d 1507 (11th Cir.1987), a fire fighter was suspended without pay for two months for refusing to cooperate in an investigation into suspected departmental drug use and failing to comply with an order that he submit to a urinalysis test. In reversing the district court's grant of summary judgment in favor of the plaintiff's employer, the Eleventh Circuit interpreted *Loudermill* as allowing an employer to suspend an employee without a prior hearing when the suspension was *with* pay. *Everett* at 1512. However, the court then categorically found that because the fire fighter had been suspended *without* pay, a pre-suspension hearing was indeed required. Id.

The *Everett* decision has been followed by at least one district court. See *Byrd v. City of Atlanta*, 709 F.Supp. 1148 (N.D.Ga.1989).

Finally, there are courts which have avoided decision as to whether a suspension without pay requires a pre-suspension hearing by merely assuming that such is in fact required. See *Swanson v. Village of Lake in the Hills*, 962 F.2d 602, 604 (7th Cir.1992) ("With respect to his suspension without pay, assuming that [plaintiff] was entitled to a pre-suspension hearing (footnote omitted), he was constitutionally entitled to no more than notice of the charges against him and an opportunity to be heard."); *Engdahl v. Dept. of Navy*, 900 F.2d 1572 (Fed.Cir.1990) ("Assuming, without deciding, that [plaintiff] had a protected property interest in not being suspended from federal employment without pay (footnote omitted), we conclude that the government did afford him procedural due process.")

The above relevant case law indicates that at the time of plaintiff's suspension in August of 1990, the law was unclear as to whether the due process requirements of *Loudermill* which clearly applied to terminations of public employees also required a hearing, in all instances, prior to a temporary suspension without pay.

In the context of a case involving issues of qualified immunity, "a district court is obligated to grant summary judgment if the law at the time of the actions giving rise to the complaint did not clearly establish a cause of action for the violation of statutory or constitutional rights, which the official should have known then existed." *Arrington v. County of Dallas*, 970 F.2d 1441, 1445 (5th Cir.1992) citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The court finds that the telephone call to plaintiff plus defendant's confirming letter which specifically detailed the reasons for the suspension as well as the procedure which was to be followed were objectively reasonable in light of the existing law.

Defendant could have reasonably concluded that immediate suspension of plaintiff following his arrest on the bribery charges was necessary in order to maintain the integrity of the Louisiana Public Service Commission in its capacity as the enforcer of interstate trucking regulations. Because the Civil Service Commission Rules provided only for suspension without pay, it was also reasonable for defendant to assume, in the absence of clear rulings to the contrary, that these rules were constitutional. Finally, because defendant was aware of plaintiff's right to a post-deprivation hearing as well as to an appeal of any adverse employment action taken against him, it was reasonable for him to believe that plaintiff would ultimately receive all of the process due him.

Therefore, in light of the unsettled state of the law existing at the time of plaintiff's suspension, defendant is entitled to qualified immunity with regard to plaintiff's due process claim.[6]

### Remaining Claims

■ With regard to plaintiff's claims that he was terminated because he exercised his right not to speak, the plaintiff has failed to provide sufficient factual evidence to support his allegation. Although plaintiff has submit-

---

**6.** The court must comment that its task has been made more difficult by reason of the lack of any response by plaintiff to the motion. The court has, nevertheless, considered all aspects of the matter.

ted an extensive list of statements, the majority are directed at the merits of the bribery charges against him rather than at the issue of whether he received adequate procedural due process before being suspended and subsequently terminated by defendant. Even those statements relevant to the process plaintiff received are unsupported by any evidence. The court finds no facts in plaintiff's complaint nor in his Statement of Undisputed Facts which support a claim under the First Amendment.

Further, plaintiff's conclusory allegation that he was fired substantially in part because he invoked his right not to speak to "his accusers" following his arrest, absent factual support, is not enough to overcome defendant's motion for summary judgment.

Accordingly, the motion by defendant, Marshall B. Brinkley, for summary judgment is hereby GRANTED and this action will be dismissed.