

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

September 23, 1996

Mr. Barry R. McBee
Chair, Texas Natural Resource
  Conservation Commission
P.O. Box 13087
Austin, Texas 78711-3087

Opinion No. DM-414

Re: Whether the state constitutionally may implement, as part of its vehicle emissions inspection and maintenance program, a federal requirement that the state temporarily may suspend station or inspector licenses immediately upon finding a violation of the program or equipment failure (RQ-894)

Dear Mr. McBee:

Federal law requires the state to authorize a quality assurance officer of the state's vehicle emissions inspection and maintenance program temporarily to suspend the license of an inspection station or inspector immediately, and prior to providing a hearing, upon discovering that the station or inspector has violated the state's program or that the station or inspector has suffered an equipment failure that directly affects emission reduction benefits. You ask whether the immediate, temporary suspension requirement violates the due-process clause of article I, section 19 of the Texas Constitution. We conclude that it does not unless it violates the federal constitution's due-process requirements. While we believe a court would find the immediate, temporary suspension requirement constitutional, whether in a particular case the state applies the requirement so as to violate the federal constitution is a question of fact that is inappropriate to the opinion process.

Before we address the constitutional issue you raise, we believe it will be helpful to examine the pertinent federal laws regarding a state's creation of a vehicle emissions inspection and maintenance program. You state in your letter to this office that the federal Clean Air Act[1] requires the state to include a vehicle inspection and maintenance program in its state implementation plan, a plan devised by the state to reduce emissions as necessary to comply with national air quality standards.[2] For purposes of this opinion, we will accept, without examination, your statement that the inspection and maintenance program is required. As we understand the federal regulations, if the state implements an

---

[1]42 U.S.C. ch. 85.

[2]*See* 40 C.F.R. §§ 51.100(j), .110.

inspection and maintenance program, vehicles in all or certain parts of the state must be inspected periodically to ensure that the vehicles comply with emissions standards.[3] The federal regulations describe several tests that the state may require in the inspection and maintenance program.[4] An inspection station or inspector must use a computerized test system to take any required test measurements,[5] and the station or inspector properly must calibrate and maintain the equipment, recording calibration data and maintenance.[6] The state must protect the integrity of an inspection and maintenance program by implementing an "ongoing quality assurance program" designed to discover, overtly and covertly, whether inspection stations and inspectors are correctly performing all tests, whether they are keeping proper records, and whether they are properly maintaining the test equipment.[7]

Finally, for our purposes here, federal law requires the state to provide for enforcement against inspection stations and inspectors who violate the state program. In particular, the state must authorize a quality assurance officer temporarily to suspend station and inspector licenses without granting a hearing:

> The quality assurance officer shall have the authority to temporarily suspend station and inspector licenses or certificates (after approval of a superior) immediately upon finding a violation or equipment failure that directly affects emission reduction benefits, pending a hearing when requested. In the case of immediate suspension, a hearing shall be held within fourteen calendar days of a written request by the station licensee or the inspector. Failure to

---

[3]See 40 C.F.R. §§ 51.350, .355(a), .356(a), (b); see also 42 U.S.C. §§ 7521(a), 7525, 7541.

[4]See id. § 51.357(a)(7) - (13); see also id. pt. 51, subpt. S, app. B (describing steady-state test).

[5]Id. § 51.358(a).

[6]Id. § 51.359; see also id. pt. 51, subpt. S, app. A.

[7]Id. § 51.363. The federal regulations require a state with a vehicle inspection and maintenance program to conduct, on a regular basis, overt and covert performance audits. Id. § 51.363(a). Overt performance audits, which the state must perform at least biannually for each test bay, must include checking to see whether the station or inspector observes appropriate document security; whether the station or inspector follows required record-keeping practices; whether the station or inspector properly displays licenses and certificates that are required to be displayed; and whether each inspector properly performs an inspection. Id. § 51.363(a)(3). Covert performance audits must include, among other things, remote visual observation of inspector performance; site visits at least once per year per number of inspectors using covert vehicles set to fail; and for stations that conduct both testing and repairs, at least one covert vehicle visit per station per year including the purchase of repairs and subsequent retesting. Id. § 51.363(a)(4).

> hold a hearing within 14 days when requested shall cause the suspension to lapse.[8]

A state may avoid this immediate, temporary suspension requirement only if the state's constitution precludes it.[9]  Additionally, the state's attorney general must "furnish an official opinion . . . explaining the constitutional impediment as well as relevant case law."[10]  You believe the immediate, temporary suspension requirement violates the Texas Constitution, and you thus have requested our opinion on the matter.

Texas Constitution article I, section 19 provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities . . . except by the due course of the law of the land."  To prevail on a due-process claim, a plaintiff must show that the state has deprived him or her of a protected property or liberty interest.[11]  Once a plaintiff shows that a state taking implicates a protected property or liberty interest, the court must determine the process to which the plaintiff is entitled.[12]

In our opinion, the immediate, temporary suspension procedure about which you ask satisfies the state constitution's due-process provision if it provides sufficient due process for purposes of the federal constitution.[13]  We have found no Texas cases or attorney general opinions addressing due-process requirements before a temporary suspension.  In matters of procedural due process, however, Texas courts traditionally follow federal court interpretations.[14]  Federal courts have determined that, at a minimum, due process requires "notice and an opportunity to be heard at a meaningful time and in a meaningful manner."[15]  Thus, a court evaluates what process is due using "a flexible standard that depends on the practical requirements of the circumstances."[16]  With respect

---

[8]*Id.* § 51.364(b)(1).  We do not find in the regulation a time period within which the station or inspector whose license is suspended must request a hearing.

[9]*Id.*

[10]*Id.* § 51.364(d)(2).

[11]*Perry v. Houston Indep. Sch. Dist.*, 902 S.W.2d 544, 548 (Tex. App.–Houston [1st Dist.] 1995, writ dism'd w.o.j.) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Nelson v. Payne*, 827 F. Supp. 1273, 1275 (S.D. Tex. 1992), *aff'd*, 18 F.3d 935 (5th Cir. 1994)).

[12]*See* 12A TEX. JUR. 3D *Constitutional Law* § 177, at 607 (1993).

[13]*See University of Tex. Medical Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995) (and cases cited therein).

[14]*Id.*

[15]*See id.* (and cases cited therein).

[16]*Id.* (and cases cited therein).

to immediate, temporary suspensions, the United States Supreme Court has concluded that the state may, in certain circumstances, temporarily suspend a license when (1) the state has an important interest to protect; (2) the state has established probable cause for the suspension; and (3) the licensee has the opportunity for a prompt post-suspension hearing.[17]

We believe *Barry v. Barchi*,[18] a 1979 United States Supreme Court case, is analogous to the situation about which you ask. In that case the Supreme Court considered a rule of the New York State Racing and Wagering Board under which a horse trainer is held responsible if his or her first-, second-, or third-place finisher tests positive for drugs after the horse race.[19] The law entitles a suspended licensee to a post-suspension hearing, but the license suspension is effective while the hearing is pending.[20] Under this rule, the Racing and Wagering Board temporarily suspended (for fifteen days) John Barchi's license.[21] Barchi claimed the state violated his due-process rights by temporarily suspending his license without a pre-suspension hearing.[22]

While the Court agreed that Barchi had a property interest in his license, and that the suspension of the license thus implicated Barchi's due-process rights, the Court disagreed that the State, before suspending the training license, must determine whether a licensee is guilty in the drugging.[23] The court initially recognized the State's "important interest" in "assuring the integrity of the racing carried on under its auspices."[24] Furthermore, the Court found that the State sufficiently established probable cause that Barchi was, at the least, negligent: the State had the testimony of its testing official, who allegedly examined Barchi's horse in accordance with prescribed testing procedures.[25] Because the State did not provide for a prompt post-suspension hearing and prompt

---

[17]*Barry v. Barchi*, 443 U.S. 55, 64 (1979).

[18]443 U.S. 55 (1979).

[19]*Id.* at 58.

[20]*Id.* at 59.

[21]*Id.*

[22]*Id.* at 61.

[23]*Id.* at 64.

[24]*Id.*

[25]*Id.* at 65. The Supreme Court indicated that a state need not, in establishing probable cause, "resolve questions of credibility and conflicts in the evidence." *Id.*

disposition of the outstanding issues between Barchi and the State, however, the Supreme Court ultimately determined that Barchi's due-process rights were violated.[26]

Similarly, the United States Court of Appeals for the Fifth Circuit concluded that a temporary suspension of a horse owner's license under Louisiana law did not require a pre-suspension hearing.[27] While recognizing the horse owner's substantial interest in his license, the court also recognized the state's important interest in protecting the integrity of horse racing.[28] In addition, the court found that "the likelihood of governmental error is small" because the evidence came from inconsistent documents that the horse owner had filed himself and the state had questioned him about the inconsistency.[29] Finally, the court found that the state provided an opportunity for a prompt hearing on the suspension.[30]

We believe a court, using the three-factored analysis set forth above,[31] would find that the immediate, temporary suspension at issue here satisfies federal due-process requirements as a matter of law. Preliminarily, we assume that a station's or inspector's license to perform emissions inspections and maintenance is a property right that the state cannot take without due process of law.[32] Considering the three factors, we believe first that a court would conclude that the immediate, temporary suspension protects an

---

[26]*Id.* at 66.

[27]*Gamble v. Webb*, 806 F.2d 1258, 1261 (5th Cir. 1986).

[28]*See id.*

[29]*Id.* at 1261-62.

[30]*Id.* at 1261.

[31]*See supra* text accompanying note 17.

[32]Texas courts have concluded that an individual's license to engage in a legitimate occupation is a property right protected under article I, section 19 of the constitution. *See, e.g., Industrial Accident Bd. v. O'Dowd*, 303 S.W.2d 763, 767 (Tex. 1957) (right to practice before administrative board); *Sam's Loan Office, Inc. v. City of Beaumont*, 49 S.W.2d 1089, 1091 (Tex. Comm'n App. 1932, holding approved) (auctioneer); *Font v. Carr*, 867 S.W.2d 873, 875 (Tex. App.--Houston [1st Dist.] 1993, writ dism'd w.o.j.) (bail bonds' writer); *Denton v. City of Austin*, 587 S.W.2d 56, 58 (Tex. Civ. App.--Beaumont 1979, no writ) (electrician); *Francisco v. Board of Dental Examiners*, 149 S.W.2d 619, 622 (Tex. Civ. App.-- Austin 1941, writ ref'd) (citing *Sherman v. State Bd. of Dental Examiners*, 116 S.W.2d 843 (Tex. Civ. App.--San Antonio 1938, writ ref'd)) (dentist). *Cf. generally Phillips v. Vandygriff*, 711 F.2d 1217, 1222 (5th Cir. 1983) (and cases cited therein) (quoting *Truax v. Raich*, 239 U.S. 33, 41 (1915)) (stating that "the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity" that due-process clause in 14th amendment to United States Constitution meant to secure). Likewise, a corporation's permit to sell cigarettes has been held to entitle the permit holder to due process before the state may finally forfeit the permit. *House of Tobacco, Inc. v. Calvert*, 394 S.W.2d 654, 657 (Tex. 1965).

important state interest.[33]  The governmental interest involved includes protecting and improving the nation's air quality, thereby promoting the public health and welfare.[34] Moreover, permitting a station or inspector to continue to inspect and perhaps illegally approve emissions systems pending a suspension hearing may enable hundreds of vehicles with faulty emissions systems to continue polluting for another year.[35]  Second, we believe that a court would conclude that, by following the procedure as set forth in the federal rules, the state may establish probable cause for the suspension.  Under the rules, immediate, temporary suspension is based upon the state's overt or covert performance audits.[36]  Additionally, the state inspector who finds a violation or equipment failure cannot suspend a license without a superior's approval.[37]  Third, we believe a court would find that the federal rules provide a licensee with an opportunity for a prompt hearing.  If the licensee requests a hearing, the state must provide one within fourteen days of the request.[38]

Nevertheless, particular situations may arise in which the state, as a matter of fact, fails to provide a licensee appropriate due process.  For example, in a particular case, the state may not, in fact, establish probable cause to temporarily suspend a license.  Whether, in a particular case, the state violates the due-process clauses of the federal and state constitutions is a question requiring the resolution of fact questions; the issue is, consequently, inappropriate to the opinion process.[39]

We conclude, therefore, that a court would determine that the immediate, temporary suspension procedure set forth in the federal regulations does not violate the federal constitution's due-process clause and thus does not violate the Texas Constitution's due-process clause.  Indeed, if the immediate, temporary suspension

---

[33]*See Barry v. Barchi*, 443 U.S. 55, 64 (1979).

[34]*See* 42 U.S.C. § 7401(b)(1); Health & Safety Code § 382.011(a)(3), (b).

[35]*See* 40 C.F.R. § 51.355(a) (requiring, unless state stipulates otherwise, annual vehicle inspections).

[36]*See id.* § 51.364(b)(1).

[37]*Id.*

[38]Even if the suspension becomes final without a hearing because the inspection station or inspector did not request a hearing, we do not believe the suspension necessarily violates the state or federal due-process provisions.  The state must provide only an *opportunity* to be heard.  *See Bell v. Burson*, 402 U.S. 535, 542 (1971) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).

[39]*See, e.g.*, Attorney General Opinions DM-98 (1992) at 3, H-56 (1973) at 3, M-187 (1968) at 3, O-2911 (1940) at 2.

procedure violates the federal constitution, the procedure would be illegal in all fifty states, and we have found no court cases from other jurisdictions making such a finding. Because we reach this conclusion, we cannot find that the state constitution bars Texas' compliance with the immediate, temporary suspension procedure.[40]

---

[40]*See* 40 C.F.R. § 51.364(d)(2). In your brief to this office, you contend that the immediate, temporary suspension requirement violates the Texas Constitution's due-process clause, and you premise your argument primarily on state case law declaring that the state may not finally revoke or suspend a license prior to a hearing without violating the licensee's due-process rights. The immediate suspension is temporary, not final, however. With one exception, which we will discuss below, the cases you cite pertain to a final, not temporary, license suspension. *See House of Tobacco, Inc. v. Calvert*, 394 S.W.2d 654 (Tex. 1965); *Industrial Accident Bd. v. O'Dowd*, 303 S.W.2d 763 (Tex. 1957); *Francisco v. Board of Dental Examiners*, 149 S.W.2d 619 (Tex. Civ. App.--Austin 1941, writ ref'd); *Denton v. City of Austin*, 587 S.W.2d 56 (Tex. Civ. App.--Beaumont 1979, no writ); *Smith v. Speir*, 504 S.W.2d 936 (Tex. Civ. App.--Fort Worth 1974, no writ); *Texas Dep't of Public Safety v. Hamilton*, 304 S.W.2d 719 (Tex. Civ. App.--Eastland), *aff'd per curiam*, 306 S.W.2d 712 (Tex. 1957). Under the federal scheme, on the other hand, the suspension may not become final until a hearing is held, if the inspection station or inspector requests one, or if the station or inspector does not request a hearing.

Moreover, *Bell v. Burson*, 402 U.S. 535 (1971), the only case you cite that pertains to the temporary suspension of a license, is not contrary to our conclusion here. *Bell* predates *Barry v. Barchi*, 443 U.S. 55 (1979), and *Gamble v. Webb*, 806 F.2d 1258 (5th Cir. 1986), and *Bell* did not use the three-factored analysis that the courts applied in *Barry* and *Gamble*. *See supra* notes 17-30 and accompanying text. Furthermore, the import of *Bell* appears to be that a state may not impose a temporary suspension based upon a certain issue unless before the suspension becomes effective the state permits the licensee to present evidence on that issue or the state makes its own finding on that issue. Here, by contrast, the statute makes specific provisions for the state to establish probable cause to believe that the station or inspector is violating the law or has suffered an equipment failure "that directly affects emission reduction benefits." *See* 40 C.F.R. § 51.364(b)(1). For these reasons and others, we believe *Barry* and *Gamble* provide persuasive authority for our conclusion.

## S U M M A R Y

The immediate temporary suspension requirement in 40 C.F.R. § 51.364(b)(1), under which a state must authorize a quality assurance officer temporarily to suspend, prior to providing a hearing, the license of an inspection station or inspector for violations of the state's vehicle emissions inspection and maintenance program, does not violate Texas Constitution article I, section 19, the due-process clause, unless it violates the federal constitution. We believe a court would find that the immediate, temporary suspension requirement does not violate the federal constitution as a matter of law. Whether a particular application of the requirement violates constitutional due-process mandates, however, is a question of fact.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General